UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

**Sean Sullivan**

Plaintiff,

– against –

**The City of New York, Detective Thomas Markardt, Shield No. 6869, Detective Dilberian, Detective Rivera, Tax # 904912, Police Officer Arafat Cooper, Shield No. 10092, Police Officer Marc Mancini, Tax # 924121, Police Officer Rivera, Tax # 9453395, Police Officer Emanuel, Tax # 934825, Police Officer Campbell, Tax # 938154, the New York City Criminal Justice Agency, and Jane Doe # 1, an employee of the New York City Criminal Justice Agency**

Defendants,

**SECOND AMENDED COMPLAINT**

Civil Action No.:

14-CV-1334 (JMF)

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 12/12/14

## I. Introduction

1.  This is a civil rights action in which the plaintiff seeks relief for the violation of his rights secured by 42 U.S.C. § 1983, the First, Fourth, Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution, and the laws of the State of New York. Each and all of the various Defendants' acts alleged herein were done by the Defendants, their agents, servants and employees, to the extent applicable, and each of them, under the color and pretense of the statutes, ordinances, regulations, customs and usages of the State of New York, the City of New York and the counties of New York and Kings, and under the authority of their office as members of the police force and court officers of said state, city and /or county.

2.  In all, the various Defendants subjected the Plaintiff to an array of violations of his unmistakable constitutional and legal rights, and the Plaintiff thereby seeks compensatory and punitive damages, declaratory relief, an award of costs and attorneys' fees, and such other and further relief as the court deems just and proper.

**II.      Parties**

3.  Sean Sullivan, the Plaintiff, is an unemployed attorney residing within the jurisdiction of this Court.

4.  Defendant, THE CITY OF NEW YORK ("NYC"), was and still is a municipal corporation duly organized and existing under and by virtue of the laws of the City and/or State of New York.

5.  THE POLICE DEPARTMENT OF THE CITY OF NEW YORK (the "NYPD"), was and still is an agency and/or department and/or entity of NYC duly organized and existing under and by virtue of the laws of the City and/or State of New York.

6.  NYC maintains a police department, namely the NYPD, where personnel, including, its agents, servants and employees, were hired, trained, managed, directed, supervised, and controlled by NYC, and is thereby liable to the Plaintiff for the acts complained of herein under, among others, the theories of vicarious liability and respondeat superior.

7.  The NYPD maintains a police department where personnel, including, its agents, servants and employees, were hired, trained, managed, directed, supervised, and controlled by practice and custom in accordance with certain guidelines and policies.

8. At all relevant times, the Defendant Detective Thomas Markardt was an employee of the NYPD acting under the color of law within the scope of his duties. Detective Markardt is sued in his individual and official capacities.

9. At all relevant times, the Defendant Detective Rivera was an employee of the NYPD acting under the color of law within the scope of his duties. Detective Rivera is sued in his individual and official capacities.

10. At all relevant times, the Defendant Detective Dilberian was an employee of the NYPD acting under the color of law within the scope of his duties. Detective Dilberian is sued in his individual and official capacities.

11. At all relevant times, the Defendant Police Officer Arafat Cooper was an employee of the NYPD acting under the color of law within the scope of his duties. Police Officer Cooper is sued in his individual and official capacities.

12. At all relevant times, the Defendant Police Officer Marc Mancini was an employee of the NYPD acting under the color of law within the scope of his duties. Police Officer Mancini is sued in his individual and official capacities.

13. At all relevant times, the Defendant Police Officer Emanuel was an employee of the NYPD acting under the color of law within the scope of his duties. Police Officer Emanuel is sued in his individual and official capacities.

14. At all relevant times, the Defendant Police Officer Rivera was an employee of the NYPD acting under the color of law within the scope of his duties. Police Officer Rivera is sued in his individual and official capacities.

15.   At all relevant times, the Defendant Police Officer Campbell was an employee of the NYPD acting under the color of law within the scope of his duties.  Police Officer Campbell is sued in his individual and official capacities.

16.   The New York City Criminal Justice Agency ("NYC CJA") is a not-for-profit corporation serving NYC's criminal justice system under contract with the Office of the Coordinator for Criminal Justice and is in turn an agency and/or entity and/or agent of NYC duly organized and existing under and by virtue of the laws of the City and/or State of New York.

17.   At all relevant times, the Defendant Jane Doe # 1 was an employee of the NYC CJA. Jane Doe # 1 is sued in her individual and official capacities.

18.   At all times relevant herein, the named individual defendants and the unnamed Jane Doe defendant (collectively, the "Defendants"), as well as the other employees of NYC referred to herein, were acting under color of state law in the course and scope of their duties and functions as agents, servants, employees and officers of NYC and otherwise performed and engaged in conduct incidental to the performance of their lawful functions in the course of their duties.

19.   On or about March 1, 2013, a Notice of Claim regarding the claims set forth herein was duly served on the New York City Comptroller's Office by certified mail delivery; that more than thirty (30) days have elapsed since the presentation of the aforesaid demand and claim, and Defendant NYC and the Comptroller thereof, have refused to make an adjustment for payment thereof, and this action was commenced within one (1) year and ninety (90) days and/or one (1) year after the cause(s) of action accrued, in accordance with the provisions of Section 504 of the General Municipal Law,  and all relevant sections of law applicable hereto.

4

20.  The Defendants' acts hereafter complained of were not objectively reasonable, and were carried out intentionally, recklessly, with malice, negligently, and/or with gross disregard for the Plaintiffs' rights.

21.  The limitations on liability set forth in CPLR 1601 do not apply to this action.

22.  The limitation in liability set forth in CPLR 1601 do not apply to this action by reason of one or more of the exemptions set forth in CPLR 1602.

## III.   Basis of Jurisdiction

23.  This Court has subject matter jurisdiction over federal claims pursuant to 28 U.S.C. §§ 1331, 1343.  This Court also has supplemental jurisdiction over the claims for relief arising under New York statutory and common law pursuant to 28 U.S.C. § 1376(a) because they form part of the same controversy and derive from the same facts.

24.  This action is brought pursuant to 42 U.S.C. §§ 1983 and 1988 for violations of Plaintiffs' rights under the First, Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendments of the United States Constitution, as well as New York State statutory and common law.

25.  Venue is proper pursuant to 28 U.S.C. §1391(b) in that the Plaintiff has been residing in this district and defendant NYC is subject to personal jurisdiction in the Southern District of New York.

## IV.   Facts

26.  That on November 28, 2012, Anne-Laure Gilard, the then-estranged wife of the Plaintiff, invited the Plaintiff via text message to visit her residence on December 2, 2012, presumably to see their daughter who lives with the Defendant and to discuss certain family

5

matters, given that they were involved in ongoing and unfinished divorce and family court proceedings. When the Plaintiff arrived at his estranged wife's address on the morning of December 2, upon information and belief, Ms. Gilard asked through her intercom if it was the Plaintiff who was ringing her doorbell and then told the Plaintiff to wait before the door would be opened. Within a few minutes, a couple of police cars arrived with four or five police officers who proceeded to arrest the Plaintiff.

27. That on or about the morning of December 2, 2012, while present at the address of his estranged wife, at 494 President Street, the Plaintiff was unarmed, unthreatening and unequivocally innocent of any crime, had not violated or breached any law, code, regulation, ordinance, statute or otherwise in effect on said date and time.

28. That the arresting police officers, contrary to the policy of the NYPD regarding potential domestic violence matters, did not interview the Plaintiff to determine if there was any cause for his estranged wife's complaint, but instead hurried him into a police vehicle without reading him his Miranda rights and, when the Plaintiff asked why he was being detained, one of the Police Officers stated to him, "You know what you did."

29. That the Plaintiff was nevertheless taken by the police officers to the 78th Precinct in Brooklyn, where the Plaintiff was placed in a holding cell for several hours. Certain belongings of the Plaintiff were taken from him by the arresting police officer, Mr. Cooper, without providing the Plaintiff a receipt for the seizure of his property. Furthermore, the Plaintiff was not offered a meal while he was held in the Precinct's holding pen. It was not until that evening, at least seven hours later, that the Plaintiff was taken to Central Booking at 120 Schermerhorn in downtown Brooklyn for processing in the criminal courts. The Plaintiff remained in the holding

cells in Central Brooklyn for two nights before he was ultimately processed to be taken to Rikers Island jail facilities.

30. While at Central Booking, the Plaintiff was compelled to sit for an interview with a representative of the NYC Criminal Justice Agency before being afforded the opportunity to consult with court-appointed counsel. The NYC CJA is empowered by NYC to gather information on the city's behalf to make bail determination for those charged with crimes in NYC criminal courts. Jane Doe #1, the person on-duty for the NYC CJA that night at central Booking, at first cut short her interview of the Plaintiff because she was unhappy with the answers the Plaintiff offered to her questions. After the Plaintiff was told who his court-appointed counsel was, the Plaintiff was compelled to sit once again for an interview with Jane Doe #1 by a judge the next day before the criminal court would even consider offering him bail or to be released on his own recognizances. At this second interview, Jane Doe #1 focused on the Plaintiff's then-homelessness and did not explore sufficiently into the Plaintiff's educational background and connections to the community in making her bail determination. When the Plaintiff was finally brought before a judge, the Plaintiff was not recommended for release on his own recognizances by the NYC CJA. In ordering that a bail bond of $750 be imposed for the Plaintiff's release, the judge noted explicitly in open court that the recommendation by the NYC CJA compelled him to impose bail for the Plaintiff's release. Because he was indigent and without meaningful financial resources, the Plaintiff was unable to post bail on his own accord.

31. That the Kings County DA's Office charged the Plaintiff with aggravated harassment and harassment in the second degree presumably, according to the filed criminal information, for certain non-threatening text messages exchanged between the Plaintiff and his estranged wife. The Plaintiff was not released from the custody of law enforcement until bail was posted on his

7

behalf on December 7, 2012 and was not able to leave Rikers Island until the morning of December 8, six days after his initial arrest. The Kings County DA's Office continued to pursue these unfounded, inadequate and trumped-up charges against the Plaintiff for over six months.

32. Upon information and belief, Ms. Gilard first called the police in October or November of 2012 regarding certain text messages between the Defendant and the Plaintiff that were heated in their tone and rhetoric as they were communications regarding critical issues surrounding the divorce and family court matters between the two parties. The Plaintiff was intent on reaching his then-estranged wife because he was also concerned about the safety of his daughter in the midst of Hurricane Sandy, which savaged the area over this period of time. Upon information and belief, Ms. Gilard called the police to have the Plaintiff arrested on December 2 because she had such previous discussions with certain employees of the NYPD about detaining the Plaintiff for text messages that were purportedly received in the previous month.

33. Upon information and belief, it was upon Ms. Gilard's conversation with certain members of the NYPD following the text messages of October 2012 that criminal charges were contrived by the Defendants. Presumably, the Plaintiff was lured into Brooklyn by the Defendants to be detained with respect to the unfounded criminal charges of aggravated harassment and harassment in the second degree under the New York State Penal Code. Furthermore, that Detective Markardt contacted the Plaintiff by text message and voicemail on various occasions in November of 2012, without explaining why he was contacting the Plaintiff or what he wanted from the Plaintiff. Detective Markardt failed to mention the Plaintiff's wife's concerns, the text messages at issue or the charges he was devising in order to unlawfully detain the Plaintiff. Detective Markardt simply recommended that the Plaintiff get counsel and the

Plaintiff thereby never had a conversation with the police regarding the complaints of the Plaintiff's then-estranged wife before his arrest.

34. That, with the cooperation of the Detective defendants and the Police Officer defendants, the Kings County DA's Office chose to prosecute the Plaintiff for alleged aggravated harassment and harassment in the second degree without establishing probable cause, and even though the recipient of the text messages never informed the Plaintiff that she did not want to communicate with him and/or that she was alarmed by the contents of the messages. The Plaintiff was thereby compelled to spend his time in the many months following his arrest defending himself against these criminal charges, which were derived from the Plaintiff's speech, until the Kings County DA's Office finally conceded the criminal case in June of 2013. Over this period of time, the Plaintiff lived under the specter of being jailed, detained or face similar penalties as a result of his arrest for trumped-up domestic violence charges and the Kings County DA's prosecution. And even after charges were dismissed, the Plaintiff still lives under the cloud of unwarranted charges that were not dismissed on the merits.

35. That in this case, upon information and belief, certain employee(s) of the Kings County DA's Office attested to the questionable complaining statements of Ms. Gilard, pursued actions against the Plaintiff without probable cause, investigated activities and behavior of the Plaintiff completely unrelated to the crime he was accused of, and appear to have provided legal advice and other assistance to Ms. Gilard in her civil proceedings against the Plaintiff for divorce, child support and child custody.

36. That the Plaintiff was brought to a facility at Rikers Island to be jailed, where he was processed by the NYC Corrections Department and was asked to partake in a strip and/or cavity

search.  The Plaintiff was not given, unlike other inmates, identification by correction officers

while he was jailed at Rikers Island, and so correction officers had no means to identify him

when he was traveling around the facility.  The Plaintiff was not provided a blanket, pillow, soap

or a toothbrush.  The Plaintiff was given a physical exam and was subjected to invasive and

unexplainable questioning by one of the facility's doctors, such as a question regarding whether

he was circumcised or not.  Certain of the Plaintiff's property were taken by corrections

personnel, including a computer flash drive that contained vital information and work product

belonging to the Plaintiff, and never returned to the Plaintiff.  The Plaintiff was placed in jail

cells with violent criminals and gang members and was physically threatened on multiple

occasions.  The Plaintiff witnessed the beatings of other inmates and lived under the specter of

whether he was the next person to be beaten.

37.  That over the course of the criminal proceeding, the Kings County DA's Office

offered a plea deal to the Plaintiff's court-appointed counsel involving participation in the TADD

(Treatment Alternatives for the Dually Diagnosed) program, a court administered program for

offenders with both a mental illness and substance abuse problem.  Because the Plaintiff did not

have and never had a mental illness or substance abuse problem, the Plaintiff on advice of

counsel refused the plea offer.  Nevertheless, the Kings County DA's Office continued to insist

on this plea offer and would not offer any other plea deal but continued to move forward to trial.

The Kings County DA's Office never requested information from the Plaintiff regarding the

Plaintiff's psychological history or his history (or lack thereof) with alcohol.  As a result, the

Kings County DA's Office continued to pursue unfounded criminal charges against the Plaintiff,

thereby upending the Plaintiff's life and subjecting him to the humiliation and trauma of an

abusive criminal proceeding, and the infamy of domestic violence charges.  Ultimately, on or

around June 4, 2013, the Kings County DA's Office conceded all criminal charges against the

Plaintiff and the criminal action at issue was dismissed in total by the court, yet the Plaintiff

remained injured for having these charges not dismissed on the merits.

### V.      Statement of Claims

AS AND FOR A FIRST CAUSE OF ACTION FOR THE VIOLATION OF 42 U.S.C. § 1983
BECAUSE OF THE DEPRIVATION OF THE PLAINTIFF'S FIRST AMENDMENT RIGHTS
UNDER THE UNITED STATES CONSTITUTION

38.      That Plaintiff repeats, reiterates and re-alleges each and every allegation

contained in paragraphs 1 to 37 above with the same force and effect as if more fully set forth at

length herein.

39.   That, by the acts alleged herein, Detectives Markardt, Rivera and Dilberian,  as well

as Police Officers Emanuel, Rivera, Cooper, Mancini and Campbell (the "Police Officer

defendants"), acting under color of state law, and in their individual and official capacities, and

within the scope of their employment, have deprived the Plaintiff of rights, remedies, privileges

and immunities guaranteed to every citizen of the United States, in violation of rights guaranteed

by the First and Fourteenth Amendments of the United States Constitution and 42 U.S.C. § 1983,

including but not limited to his right to freedom of speech and freedom of expression, and

freedom from retaliation for the exercise of one's free speech rights.

40.   That the aggravated harassment law of the New York Penal Code, § 240.30, used to

prosecute the Plaintiff has been found to be unconstitutional by the New York State Court of

Appeals as it is violative of the First Amendment of the United States Constitution in that it is vague and subjects citizens of New York State to criminal penalty as a result of the exercise of their right to free speech and expression; and that the Detective defendants, the Police Officers defendants and employees of the Kings County DA's office applied the aggravated harassment statute in an unconstitutional manner by prosecuting the Plaintiff in response to and retaliation for non-threatening statements allegedly made by him via text message to Ms. Gilard, thereby abridging his right to free speech.

41.   That Detectives Markardt, Rivera and Dilberian, and the Police Officer defendants, acting on behalf of the Defendant NYC, which has had a policy of arresting and prosecuting citizens of New York City for no other reason than the exercise of their First Amendment rights of free speech and expression, as demonstrated and discussed in department policy manuals and domestic violence literature that the Plaintiff can provide at trial; and that the detective defendants, the Police Officer defendants and employees of the Kings County DA's office are trained to take constitutionally infirm enforcement actions in domestic violence disputes solely based upon a person's expression of free speech by arresting and prosecuting individuals pursuant to the aggravated harassment law and other state laws, as the Plaintiff was arrested; that the Mayor's Office to Combat Domestic Violence has highlighted acts as insignificant as "name calling" as indicia of domestic violence and has designated "put downs" as abuse in public information campaigns, causing misinformation as to what behavior constitutes criminal domestic violence; and that NYC failed to train adequately its employees of the NYPD and assistant district attorneys to respect the First Amendment rights of domestic violence suspects.

42.   That Defendant NYC is directly liable for the actions of its employees, including the above-named individual Defendant employees, agents and/or servants for conduct committed

within the scope of their employment, and that it is liable to the Plaintiff for the harms exacted

on the Plaintiff due to the customs and policies furthered by the Police Officer defendants,

Detectives Markardt, Rivera and Dilberian, as well as the Kings County DA's office as alleged

above.

43.   Because Detectives Markardt, Rivera and Dilberian, and the Police Officer

defendants, acting under color of state law, in their individual and official capacities and within

the scope of their employment, detained and/or prosecuted the Plaintiff pursuant to the

aggravated harassment law, and because this activity by law enforcement criminalized

Constitutionally-protected speech and has chilled the Plaintiff from exercising his First

Amendment rights when communicating with his estranged wife and others, the unconstitutional

detention practices of the NYPD trampled upon the constitutional rights of the Plaintiff.

44.   Furthermore, that the harassment in the second degree law, New York Penal Code, §

240.26(3), also used to prosecute the Plaintiff should be declared unconstitutional because it is

vague and over-broad and is used in New York City to punish the exercise of free speech, and

that unless this harassment law is declared unconstitutional by this court pursuant to the First and

Fourteenth Amendments of the United States Constitution, this law will continue to be used by

the NYPD to enforce selectively a constitutionally suspect law and  to punish New Yorkers

solely for engaging in non-threatening speech.

45.   That Detectives Markardt, Rivera and Dilberian, and the Police Officer defendants

referred to herein are not entitled to either absolute or qualified immunity because, among other

reasons, their actions were not objectively reasonable but were reckless, malicious, negligent

and/or intentional.

46. As a direct and proximate result of the unconstitutional acts of the employees of the NYPD referred to above, the Plaintiff was discredited in the minds of many members of the community, and has suffered injury and damages including, *inter alia*, physical and mental pain, injury to personal and business reputation, loss of income, suffering and mental anguish.

## AS AND FOR A SECOND CAUSE OF ACTION FOR THE VIOLATION OF 42 U.S.C. § 1983 DUE TO THE FALSE ARREST AND FALSE IMPRISONMENT OF THE PLAINTIFF AND MUNICIPAL LIABILITY UNDER MONELL

47. That Plaintiff repeats, reiterates and re-alleges each and every allegation contained in paragraphs 1 to 46 above with the same force and effect as if more fully set forth at length herein.

48. Because Detectives Markardt, Rivera and Dilberian, and the Police Officer defendants, acting under color of state law, in their individual and official capacities and within the scope of their employment, arrested the Plaintiff without probable cause contrary to applicable law and, and because this false arrest was predicated upon an unconstitutional application of the New York Penal Code in accordance with the practice and custom of the NYPD acting on behalf of NYC, the Defendants should have known that an individual may not be arrested solely for non-threatening First-Amendment protected speech that did not present a clear and present danger.

49. Upon information and belief, that the Defendants had ample time to seek and obtain an arrest warrant against the Plaintiff from a court of law but failed to do so, and the arrest of the Plaintiff without a warrant was clearly effectuated without probable cause, and that police

14

officers of reasonable competence would have sought an arrest warrant in this instance, if there was probable cause for an arrest or if it was reasonable to believe that probable cause existed. According to the NYC Police Department's Patrol Guide, probable cause requires a set of facts that would compel "a person of reasonable caution" that a crime was committed and that the defendants willfully ignored the requirements of their own employer's Patrol Guide because probable cause did not exist in this instance. That the NYPD Patrol Guide further requires a police officer to "ascertain all facts" by "interview[ing] persons involved separately," which the defendants did not do in this case before the arrest at issue. Further, according to the NYPD Patrol Guide, "An officer cannot effect an arrest for violations not committed in his/her presence, unless such violation is specifically prohibited in a current Order of Protection issued to the complainant/victim."

50. That the Defendants Detectives Markardt, Rivera and Dilberian, and the Police Officers defendants, acting under color of state law, in their individual and official capacities and within the scope of their employment, detained and imprisoned the Plaintiff without probable cause or sufficient legal justification for an arrest, in violation of the Plaintiff's Fourth Amendment rights under the United States Constitution.

51. That the Plaintiff was falsely imprisoned and remained imprisoned while locked in a cell at the 78th Police Precinct, transported in police and correction vehicles by various law enforcement and personnel of the NYC Corrections Department, confined to various cells at Central Booking in downtown Brooklyn and further jailing at Rikers Island over several days.

52. That Detectives Markardt, Rivera and Dilberian, and the Police Officer defendants intended to have the Plaintiff confined and imprisoned; the Plaintiff was conscious of the

confinement, the Plaintiff did not consent to the confinement and the confinement was not otherwise privileged.

53.   That the Plaintiff was detained for over forty-eight hours without being afforded a full probable cause hearing in violation of his due process rights under the United States Constitution, and that such a delay in processing the Plaintiff after his arrest is a prima facie indicia of false imprisonment and a violation of the Plaintiff's rights guaranteed by the Fourth Amendment and the Due Process Clause of the Fourteenth Amendment of the United States Constitution and 42 U.S.C. § 1983.

54.   That, according to a NYC CJA report, "Except in unusual circumstances, the court arraigns the defendant within 24 hours of the arrest."  That NYC had a policy and custom to jail and prosecute men accused of domestic violence without probable cause and in violation of the Constitutional rights of these suspects; and that NYC was deliberately indifferent to the Plaintiff's constitutional rights by failing to train and supervise these individual Defendants in the proper and lawful performance of their duties, and such failure to train and supervise is reflective of a policy and/or custom of NYC due to the city's historical policy of targeting and jailing certain groups of New Yorkers for periods of time without legal justification, as abundantly reported in newspapers and other media.  Further that it was the policy and/or custom of NYC to inadequately and improperly investigate citizen complaints of police misconduct, and acts of misconduct, including those alleged herein, were instead tolerated by NYC.

55.   That Detectives Markardt, Rivera and Dilberian, and the Police Officer defendants are not entitled to either absolute or qualified immunity because, among other reasons, these actions were not objectively reasonable but were reckless, malicious and intentional.

56. As a direct and proximate result of the misconduct described above, the Plaintiff has suffered injury and damages including, inter alia, physical and mental pain, suffering and mental anguish.

## AS AND FOR A THIRD CAUSE OF ACTION FOR THE VIOLATION OF 42 U.S.C. § 1983 DUE TO THE MALICIOUS PROSECUTION OF THE PLAINTIFF

57.     That Plaintiff repeats, reiterates and re-alleges each and every allegation contained in paragraphs 1 to 56 above with the same force and effect as if more fully set forth at length herein.

58.     That on or about the date of the incident and from that time until all criminal charges were dismissed on or about June 8, 2013, which was a favorable termination for the accused, Detectives Markardt, Rivera and Dilberian, NYC and the Police Officer defendants took various actions in furtherance of the deliberate and malicious prosecution of the Plaintiff without any probable cause, by seeking and effectuating the arrest of the Plaintiff, filing or causing to be filed certain prosecutorial papers in the Criminal Court of the City of New York, Kings County, among other actions, for the purpose of falsely accusing the Plaintiff of violations of the criminal laws of the State of New York.

59. That malice can be inferred because Detectives Markardt, Rivera and Dilberian, and the Police Officer defendants could have given the Plaintiff a Desk Appearance Ticket to answer these criminal charges, but instead the Plaintiff was thrown into one of the most infamous municipal jails in this country, Rikers Island, even though he lacked a criminal record and no physical violence was alleged against him; and that the Kings County DA's Office would only

offer the Plaintiff a plea bargain to attend a TADD program which was completely unsuited to him and in turn suggested a malicious slander against the Plaintiff regarding his character and deportment.

60.   That Detectives Markardt, Rivera, and Dilberian, and the Police Officer defendants failed to take reasonable steps to stop the prosecution of the Plaintiff and instead maliciously and deliberately provided false and/or incomplete information to the Kings County DA's Office to induce prosecution of the Plaintiff, and due to the absence of probable cause malice can be inferred from the acts described herein.

61.   That the individual Defendants are not entitled to either absolute or qualified immunity for their malicious prosecution of the Plaintiff because, among other reasons, these actions were not objectively reasonable but were reckless, malicious and intentional.

62.   That Defendant NYC is directly liable for the actions of its employees, including the above-named Defendant employees, agents and/or servants for conduct committed within the scope of their employment, and that it is liable to the Plaintiff for the harms exacted on the Plaintiff due to the customs and policies furthered by the police officers and the Kings County DA's office to prosecute certain groups of New Yorkers with malice as alleged above, and to target male spouses in domestic violence disputes without competently investigating the potential complaint by their respective spouses.  According to Center for Court Innovation research, "However, victim advocates stated that they did not notify the judge or the District Attorney's Office about [domestic violence] claims they knew to be false."  This research further states, "While the number of false claims filed was disputed, the existence of false claims was not."

18

63.  That by reason of the aforesaid, the Plaintiff's freedom was restricted, he was subjected to great indignity, humiliation, injury to personal and business reputation, serious pain and great distress of mind and body.

## AS AND FOR A FOURTH CAUSE OF ACTION FOR THE VIOLATION OF 42 U.S.C. § 1983 DUE TO THE LACK OF DUE PROCESS AND IMPOSITION OF EXCESSIVE BAILS CONTRARY TO THE EIGHTH AMENDMENT

64.     That Plaintiff repeats, reiterates and re-alleges each and every allegation contained in paragraphs 1 to 63 above with the same force and effect as if more fully set forth at length herein.

65.     That the Plaintiff was forced without his consent to sit for an interview with the NYC CJA before affording the Plaintiff court-appointed counsel, as was his right because of his economic poverty; and that this interview was purportedly to determine whether the Plaintiff was entitled to be released on bail, an analysis that the Plaintiff was forced to endure by NYC and the NYC CJA without first being afforded the benefit of counsel; and that NYC and the NYC CJA imposed excessive bail amounts and conditions on the Plaintiff in violation of his rights under the Sixth and Eighth Amendments to the United States Constitution.

66. That, according to a NYC CJA report, "An interviewer from the New York City Criminal Justice Agency interviews the defendant regarding his or her community ties and prepares a release recommendation for the court." Furthermore, that according to the NYC CJA's own research, over three-quarters of non-felony arrestees in New York City are released

on their own recognizances, without bail imposed.  That, the NYC CJA attests that it does not recommend a "bail amount" to the court but apparently did so in my case.

67.   That the Plaintiff had no prior criminal record, was no threat to any person and had not threatened or physically menaced any person pursuant to his incarceration; and that, even if the charges against the Plaintiff were warranted (which they were not), that the Plaintiff should have been released on his own recognizances without the imposition of bail because of he had a clean criminal record and was not charged with an offense involving physical violence; and that the NYC CJA's  recommendation as proffered by Jane Doe # 1 was made under the color of law in accordance pursuant to municipal policy and custom in violation of the Plaintiff's rights under the United States Constitution, including his rights not to be deprived of his liberty without due process of law, his right against self-incrimination and his right not to have excessive bail imposed on his release from detention by the government.  Furthermore, that the recommendation made by Jane Doe # 1 defendant was the proximate cause of the imposition of bail for the Plaintiff's release, and that such recommendation was not objectively reasonable but made with malice and recklessness, given that non-violent detainees such as the Plaintiff are customarily released on their own recognizances until the next court date.

68.   At all times material to this complaint, NYC, acting through its police and corrections departments and the NYC CJA, and through the individual defendants, including Jane Doe # 1, had de facto policies, practices, and customs to impose excessive bail conditions on certain criminal defendants appearing in the courts of NYC, of proposing bail conditions in courts of law based upon interviewing defendants without the presence or knowledge of counsel, and of coercing defendants to participate in interviews with agents of the court outside of the presence of counsel in order for those charged to have any chance of Constitutionally valid bail

20

conditions imposed in his or her case; and of failing to properly train, screen, supervise, or discipline employees, and of failing to inform the individual defendants' supervisors of their need to train, screen, supervise or discipline said defendants.  These policies, practices, customs, and usages were a direct and proximate cause of the unconstitutional conduct alleged herein.

69.   That Jane Doe # 1 not entitled to either absolute or qualified immunity for these alleged actions against the Plaintiff because, among other reasons, these actions were not objectively reasonable but were reckless, malicious and intentional.

70.   That by reason of the aforesaid detention of the Plaintiff in violation of his constitutional rights, he was imprisoned and subjected to great indignity, humiliation, embarrassment, serious pain, injury to personal and business reputation, legal expenses, disruption of life, and great distress.

### AS AND FOR A FIFTH CAUSE OF ACTION FOR THE VIOLATION OF 42 U.S.C. § 1983 DUE TO THE DEPRIVATION OF THE PLAINTIFF'S CONSTITUTIONAL RIGHTS IN RIKER'S ISLAND

71.   That Plaintiff repeats, reiterates and re-alleges each and every allegation contained in paragraphs 1 to 70 above with the same force and effect as if more fully set forth at length herein.

72.   That certain members of the NYC Corrections Department acted in a manner that exceeded all reasonable bounds of decency with an intent to deprive the Plaintiff of his liberty and Constitutional rights without due process of law.

73. That certain Corrections Department employees, acted under color of state law, when it subjected the Plaintiff to an unlawful strip and/or cavity search and released the Plaintiff into the general population of the Rikers Island jail facilities without identification, a blanket, soap and toothbrush, and thereby deprived the plaintiff of his liberty, rights, privileges, or immunities secured by the Fourth Amendment to the United States Constitution and the laws of New York. According to the NYPD Patrol Guide, "A strip search is any search in which an individual's undergarments (e.g., bra, underwear, etc.) and/or private areas are exposed or in which an individual's clothing is removed, lifted up, or pulled down to expose undergarments or private areas."

74. That a Corrections Department employee performed a medical examination of the Plaintiff in which such employee encroached on the Plaintiff's right to privacy and due process rights by, among other actions, asking personal and sexually suggestive questions regarding the Plaintiff and his family without any discernible medical rationale in a coercive detention environment, and exceeded the bounds of a typical physical examination. Furthermore, during the period of Plaintiff's incarceration, he was in the midst of criminals who perpetrated violent crimes, causing the Plaintiff to be fearful of imminent physical harm during his time at Rikers Island.

75. Further, certain NYC Corrections Department employees acted with gross and wanton disregard of the Plaintiff's rights, when in the absence of reasonable suspicion that the Plaintiff was secreting contraband it subjected him to a strip search, and interrogation without an attorney, thereby depriving him of his rights, privileges and immunities in violation of the Fourth, Fifth and Fourteenth Amendments.

76. That the defendant NYC had a policy and custom of subjecting certain detainees in Rikers Island to unacceptable conditions in violation of their Constitutional rights, and failed to

exercise due care and caution in its hiring, retaining, promoting, and training practices in that it failed to adequately test, analyze test results, and/or investigate the background of the defendant employees of the NYC Corrections Department; that NYC failed to adequately screen said officers and employees, failed to adequately monitor officers, failed to properly discipline officers who violate the policies of the NYC Corrections Department, failed to properly train and retrain officers and in that defendant NYC, its agents, servants and/or employees were otherwise careless, negligent, and reckless, as is evidenced by media reports regarding malfeasance at Rikers Island.

77.   That such acts described herein were conducted in accordance with a policy and/or custom of the NYC Corrections Department that is contrary to applicable federal constitutional law.

78.   That the employees of the NYC Corrections Department are not entitled to either absolute or qualified immunity for their acts against the Plaintiff because, among other reasons, these actions were not objectively reasonable but were reckless, malicious and intentional.

79.   That by reason of the aforesaid conduct in violation of the Plaintiff's constitutional rights, he was imprisoned and subjected to great indignity, humiliation, embarrassment, serious pain, injury to personal and business reputation, disruption of life,  and great distress.

## AS AND FOR A SIXTH CAUSE OF ACTION FOR THE VIOLATION OF 42 U.S.C. § 1983 BY THE DEPRIVATION OF THE PLAINTIFF'S LIBERTY WITHOUT DUE PROCESS

80.     That Plaintiff repeats, reiterates and re-alleges each and every allegation contained in paragraphs 1 to 79 above with the same force and effect as if more fully set forth at length herein.

81.  That certain Assistant District Attorneys in the Kings County DA's Office, acting under the color of state law and within the scope of their employment, offered the Plaintiff a single plea deal over the course of the criminal proceedings against him; and that such offer required the Plaintiff to enter the TADD program, a rehabilitative program for defendants with both mental and substance abuse problems, even though the Plaintiff has never had a history of mental or substance abuse over the course of his entire life.

82.  That these Assistant District Attorney's above acts subjected the Plaintiff to a needlessly lengthened criminal justice proceeding over months, refused to exercise its discretion in pursuing a criminal case without probable cause over those months, interfering with the Plaintiff's life and pursuit of his career aims, and the indignity, embarrassment and humiliation of respected public servants seeking his entry into a program carrying a grave stigma to his reputation  and standing in the community. That, according to a NYC CJA report, "When it becomes clear that further work will not produce sufficient evidence for a conviction, the ADA sets the case file aside but keeps the case active in court as long as legally permissible," purportedly for as long as 90 days.

83.  That the above mentioned plea offer and discussions that gave rise to and subsequent presentation of the plea offer constituted per se defamatory statements by the Assistant District Attorneys that the Plaintiff suffered from a mental or substance abuse problem, or both, and that these acts not only would have subjected the Plaintiff to a court-ordered program completely unsuited to him, but imposed the burden of his needlessly having to defend himself against the criminal charges before the criminal courts over many months, rather than agreeing to a sensible plea bargain with the Kings County District Attorney's office in accordance with the custom and practice of New York City criminal cases.  Furthermore, that the Plaintiff's options as a lawyer

seeking employment in New York were limited by the malicious acts of these Assistant District Attorneys, and his license to practice law was placed in a challengeable circumstance, an additional deprivation of a liberty interest.

84.  That these above-alleged acts in the plea bargaining and preparation and in the investigation of the criminal case against the Plaintiff resulted in the deprivation of a liberty interest of the Plaintiff under the Due Process clauses of the U.S. Constitution, namely a "stigma plus" injury.

85.  That these employees of the Kings County DA's Office are not entitled to absolute or qualified immunity because the formulation of the plea offer by the investigative acts of the Kings County DA's office and its presentation in and out of court were not devised and furthered in a prosecutorial role but served as a testimony of a complaining witness or administrator as to the facts supporting the plea remedy, namely the Plaintiff's state of mind and health, and these acts in turn were not objectively reasonable but were reckless, intentional and malicious.

86.  That the defendant NYC had a policy and custom to subject those charged with crimes to lengthened criminal proceedings without establishing probable cause and a policy and custom of subjecting men accused of domestic violence to the criminal justice system without accounting for the role of the female partner in the domestic violence incident; and that NYC failed to exercise due care and caution in its hiring, retaining, promoting, and training practices in that it failed to adequately test, analyze test results, and/or investigate the background of the employees of the Kings County DA's office; NYC failed to adequately screen said employees, failed to adequately monitor ADA's, failed to properly discipline ADA's who violate the policies of the District Attorney's office, failed to properly train and retrain ADA's and in that defendant

NYC, its agents, servants and/or employees were otherwise careless, negligent, and reckless, as is evidenced by media reports of malfeasance in the Kings County DA's office.

87.   That by reason of the aforesaid violation of the Plaintiff's constitutional rights, he was subjected to great indignity, humiliation, embarrassment, serious pain, injury to personal and business reputation, legal expenses, disruption of life,  and great distress.

## AS AND FOR A SEVENTH CAUSE OF ACTION FOR FALSE ARREST UNDER APPLICABLE NEW YORK LAW

88.     That Plaintiff repeats, reiterates and re-alleges each and every allegation contained in paragraphs 1 to 87 above with the same force and effect as if more fully set forth at length herein.

89.     That beginning on or about the date of incident at the location of incident, the Police Officer defendants proceeded to arrest the Plaintiff without a warrant, authority of law or probable cause.

90.   That said arrest was effectuated without any warrant or other legal process and without authority of the law and without any reasonable grounds, or cause to believe that the Plaintiff was guilty of any crimes, or that the Ms. Gilard had just cause for any criminal complaint against the Plaintiff.

91.   That the Plaintiff was wholly innocent of any crime and did not contribute in any way or manner to his arrest by the Police Officer defendants and was forced to submit to the aforesaid arrest entirely against his will.

26

92. That the Police Officer defendants, as set forth above, intended to arrest and confine the Plaintiff; the Plaintiff was conscious of the arrest and confinement, the Plaintiff did not consent to the arrest and confinement; and the arrest and subsequent confinement were not otherwise privileged.

93. That Defendant NYC is liable for the tortious false arrest of the Plaintiff based upon the theories of respondeat superior and vicarious liability.

94. That by reason of the aforesaid false arrest and detention of the Plaintiff, he was imprisoned and subjected to great indignity, humiliation, embarrassment, serious pain, injury to personal and business reputation, legal expenses, disruption of life, and great distress.

## AS AND FOR A EIGHTH CAUSE OF ACTION FOR FALSE IMPRISONMENT UNDER APPLICABLE NEW YORK LAW

95. That Plaintiff repeats, reiterates and re-alleges each and every allegation contained in paragraphs 1 to 94 above with the same force and effect as if more fully set forth at length herein.

96. That certain of the Detective defendants and Police Officer defendants intentionally handcuffed and imprisoned the Plaintiff on December 2, 2013, without any just cause or probable cause, and held him against his will until he was released on or about December 8, 2013.

97. That the Plaintiff was falsely imprisoned and remained imprisoned over several days.

98.   That said imprisonment was effectuated without any warrant or other legal process and without authority of the law and without any reasonable grounds, or cause to believe that the Plaintiff was guilty of any crimes, or that the defendants had just cause or probable cause to imprison the Plaintiff.

99.   That the Plaintiff was wholly innocent of any crime and did not contribute in any way or manner to his imprisonment by the individual Defendants and was forced to submit to the aforesaid imprisonment entirely against his will.

100.   That the individual Defendants intended to have the Plaintiff confined; the Plaintiff was conscious of the confinement, the Plaintiff did not consent to the confinement and the confinement was not otherwise privileged.

101.   That Defendant NYC is liable for the tortious false imprisonment of the Plaintiff based upon the theories of respondeat superior and vicarious liability.

102.   That by reason of the aforesaid false imprisonment and detention of the Plaintiff, his freedom was restricted, he was subjected to great indignity, humiliation, loss of economic and income opportunity, serious pain and great distress of mind and body.

## AS AND FOR A NINTH CAUSE OF ACTION FOR MALICIOUS PROSECUTION UNDER APPLICABLE NEW YORK LAW

103.   That Plaintiff repeats, reiterates and re-alleges each and every allegation contained in paragraphs 1 to 102 above with the same force and effect as if more fully set forth at length herein.

104. That on or about the date of the incident and from that time until all criminal charges were dismissed on or about June 8, 2013, which was a favorable termination for the accused, NYC and the individual Defendants took various actions in furtherance of the deliberate and malicious prosecution of the Plaintiff without any probable cause for the purpose of falsely accusing the Plaintiff of violations of the criminal laws of the State of New York.

105. That the commencement of these criminal proceedings was malicious and began in malice and without probable cause by the individual Defendants so that the proceedings could embarrass and humiliate the Plaintiff.

106. That Defendant NYC is liable for the tortious malicious prosecution of the Plaintiff based upon the theories of respondeat superior and vicarious liability.

107. As a result of the malicious prosecution, that the Plaintiff was deprived of his liberty and suffered the humiliation, mental anguish, indignity, frustration, injury to good name and reputation, and loss of income and economic opportunity resulting from an unjust criminal prosecution.

## AS AND FOR A TENTH CAUSE OF ACTION FOR ABUSE OF PROCESS UNDER APPLICABLE NEW YORK LAW

108. That Plaintiff repeats, reiterates and re-alleges each and every allegation contained in paragraphs 1 to 107 above with the same force and effect as if more fully set forth at length herein.

109. By the conduct and actions described above, that Detectives Markardt, Rivera and Dilberian, and the Police Officer defendants and certain employees of the Kings County DA's office issued process against the Plaintiff compelling the performance or forbearance of prescribed acts. That neither said individual Defendants nor the Kings County DA's office possessed legitimate charges against the Plaintiff, willfully and maliciously refused to withdraw these criminal charges for over six months, and compelled the Plaintiff to defend himself against criminal charges for the purpose of willfully and intentionally inflicting harm, pain and suffering upon the Plaintiff.

110. That the purpose of activating the process was intent to harm the Plaintiff without economic or social excuse or justification, which was outside the legitimate ends of the legal process. The acts and conduct of the Police Officer defendants and the Kings County DA's Office were the direct and proximate cause of significant injury and damage to the Plaintiff and violated his statutory and common law rights as guaranteed by the laws and Constitution of the United States of America and the State of New York.

111. That the Defendants, jointly and severally, their agents, servants, and/or employees failed to take reasonable steps to stop the prosecution of the Plaintiff and instead maliciously and deliberately provided false and/or incomplete information to the Kings County DA's office to induce prosecution of the Plaintiff and due to the absence of probable cause malice can be inferred.

112. That Defendant NYC is liable for the tortious abuse of process against the Plaintiff based upon the theories of respondeat superior and vicarious liability.

113.  That Detectives Markardt, Rivera, and Dilberian, the Police Officer defendants and the Kings County DA's office acted with intentional, knowing, callous, and/or reckless indifference to the plaintiff's rights when they arrested him, prosecuted him and had him confined in New York City's jail facilities.

114.  That by reason of the aforesaid, the Plaintiff was injured in mind and body, suffered injury to personal and business reputation, and loss of income and economic opportunity.

## AS AND FOR A ELEVENTH CAUSE OF ACTION FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS UNDER APPLICABLE NEW YORK LAW

115.    That Plaintiff repeats, reiterates and re-alleges each and every allegation contained in paragraphs 1 to 114 above with the same force and effect as if more fully set forth at length herein.

116.    That Detectives Markardt, Rivera and Dilberian, and the individual Police Officer defendants acted in a manner that exceeded all reasonable bounds of decency with an intent to inflict emotional distress upon the Plaintiff since the Plaintiff would likely had been shocked by the incidents of his arrests and incarceration and, upon information and belief, a desire to embarrass him in public and in front of his daughter for no legitimate reason, and subject him to further humiliation.

117. That, upon information and belief, Detectives Markardt, Rivera and Dilberian, and certain individual police officers participated in a ruse using the Plaintiff's regard and love for his daughter in order to create a public scene of his arrest instead of informing the Plaintiff of any

concerns or criminal charges to his face so that he could determine to surrender voluntarily, to the extent that there were legally sufficient charges against him.

118. That Detectives Markardt, Rivera and Dilberian, and the individual Police Officer defendants did purposely, deliberately, intentionally, recklessly, wantonly, with malice, decide to not issue to the Plaintiff a Desk Appearance ticket (D.A.T.), all with the intent to harass, annoy, humiliate and embarrass the Plaintiff, to interfere with and deprive the Plaintiff of the right to be at liberty, and deliberately to cause him to be processed through the Criminal Court System

119. That said Defendants did abuse and violate their own guidelines and rules and regulations in a deliberate attempt to imprison Plaintiff and subject him to a criminal process that was unjustified by any legal theory or reasonable law enforcement necessity.

120. That Defendant NYC is liable for the tortious intentional infliction of emotional distress against the Plaintiff based upon the theories of respondeat superior and vicarious liability.

121. That by reason of the aforesaid, the Plaintiff suffered severe mental anguish, frustration, humiliation, embarrassment, injury to personal and business reputation, indignity and great emotional distress.

## AS AND FOR A TWELFTH CAUSE OF ACTION FOR NEGLIGENCE AND FAILURE TO TRAIN UNDER APPLICABLE NEW YORK LAW

122. That Plaintiff repeats, reiterates and re-alleges each and every allegation contained in paragraphs 1 to 121 above with the same force and effect as if more fully set forth at length herein.

123.   That the Defendants NYC, NYC CJA, and their agents, servants and employees, carelessly and recklessly failed to properly train and supervise their employees, in that they failed to train their employees to control their tempers and exercise the proper deportment and temperament; and to otherwise act as reasonable, prudent civil employees or agents; failed to give them proper instruction as to their department, behavior and conduct as representatives of their employer; and, in that the Defendants, their agents, servants and employees were otherwise reckless, careless and negligent.

124.   That the Defendants, its agents, servants and employees negligently, carelessly and recklessly performed their police duties in that they failed to use such care in the performance of their police duties as a reasonably prudent and careful police officer would have used under similar circumstances; in that they carelessly, recklessly and negligently arrested the Plaintiff without making a proper investigation; in that they were negligent, careless and reckless in the manner in which they operated, controlled and maintained their agents, servants, and employees; violating established rules, procedures and policies, and in that the Defendants, their agents, employees and servants were otherwise negligent, careless, and reckless.

125.   That the aforesaid occurrence, to wit the false arrest, false imprisonment, strip-search/body-cavity search, malicious prosecution, excessive bail recommendations, coercive interrogations, and negligence in training personnel resulting in injuries there from, were caused by reason of the negligence of the Defendants, its agents, servants and employees without any negligence on the part of the Plaintiff.

126.   That as a direct and proximate result of the aforesaid, the Plaintiff was injured in mind and body, still suffers and upon information and belief, will continue to suffer great mental pain,

33

pain and suffering , humiliation and embarrassment, emotional and mental distress, inconvenience, and loss of personal and business income, and the Plaintiff has been otherwise damaged because of the false charge of aggravated harassment and otherwise.

## AS AND FOR A THIRTEENTH CAUSE OF ACTION FOR CONVERSION AND INVASION OF PRIVACY UNDER APPLICABLE NEW YORK LAW

127.    That Plaintiff repeats, reiterates and re-alleges each and every allegation contained in paragraphs 1 to 126 above with the same force and effect as if more fully set forth at length herein.

128.   The Plaintiff is the owner of and has the legal right to possession of the aforementioned papers, mail and computer flash drive containing valuable and singular work product and information compiled by the Plaintiff, all of which were irreplaceable.

129.   That certain of the Police Officer defendants and NYC Correction Officers took and converted the property of the Plaintiff without the permission of the Plaintiff.  Contrary to the NYPD Patrol Guide, which states, "When noncontraband property is removed from the person or possession of any individual, and taken into police custody for any reason," such police officer must "inform the person that he or she may examine the PROPERTYCLERK'S INVOICE." The Patrol Guide further states, "It is incumbent upon desk officers to ensure that persons from whom property is taken into custody receive their copies of the INVOICE as well as a copy of the NOTICE TO PERSONS FROM WHOM PROPERTY HAS BEEN REMOVED BY THE POLICE DEPARTMENT." The said defendants failed to follow their own policy manual.  Such

actions were malicious and taken in reckless and willful disregard of the Plaintiff's rights, constituting an invasion of the privacy of the Plaintiff.

130.   The Plaintiff has demanded the return of the property and the applicable defendants have failed to return the same.

131.   Upon information and belief, certain of the Defendants have exposed the Plaintiff to identity theft and the misappropriation of his valuable work product by the seizure and non-return of his property.  These acts amount to an invasion of the privacy of the Plaintiff.

132.   The Plaintiff is entitled pursuant to its action in replevin to an order of seizure of its property that is in the possession of certain of the Defendants, and/or to an injunction directing these Defendants to return the property forthwith to plaintiff.

133.   In the alternative, to the extent defendant has converted the Plaintiff's property to its own use prior to the return of all or some of the property, the Plaintiff is entitled compensatory damages and special damages.

134.   That Defendant NYC is liable for these tortious acts against the Plaintiff based upon the theories of respondeat superior and vicarious liability

## AS AND FOR A FOURTEENTH CAUSE OF ACTION FOR THE VIOLATION OF THE NEW YORK STATE CONSTITUTION

135.   The Plaintiff repeat and re-allege paragraphs 1 through 134 as if fully set forth herein.

136.   The Defendants subjected the Plaintiff to the foregoing acts and omissions without due process of law, thereby depriving the Plaintiff of rights, privileges, and immunities secured

by Article 1, §§ 8, 9, 11, and 12 of the New York State Constitution, including, without

limitation, the following deprivations of his rights, privileges, and immunities:

      i. The Plaintiff was deprived of freedom of speech, in violation of New York

State Constitution Article 1, § 1;

      ii. The Plaintiff was deprived of his right to equal protection under the law and was

subjected to discrimination based on his gender and race, in violation of New York State

Constitution Article 1, § 11; and

      iii. The Plaintiff was deprived of his right to be free from unreasonable searches

and seizures, in violation of New York State Constitution Article 1, § 12.

      137. That as a direct and proximate result of the aforesaid, the Plaintiff was injured in

mind and body, still suffers great mental pain and suffering, humiliation and embarrassment,

emotional and mental distress, inconvenience, and loss of personal and business income, and the

Plaintiff has been otherwise damaged.

## AS AND FOR A FIFTEENTH CAUSE OF ACTION FOR PUNITIVE DAMAGES

      138. That Plaintiff repeats, reiterates and re-alleges each and every allegation

contained in paragraphs 1 to 137 above with the same force and effect as if more fully set forth at

length herein.

139.  That the Defendants have violated important public policy interests in the maintenance of the integrity of the criminal justice system and the preservation of the rule of law, and in misusing the trust bestowed on civil service employees acting in the public interest.

140.  It is necessary to punish the Defendants for such egregious conduct and to deter the Defendants and any other law enforcement personnel who might consider similar conduct in the future.

141.  Accordingly, punitive damages should be awarded against the Defendants.

## VI.    Relief Sought

WHEREFORE, the Plaintiff respectfully requests that this Court:

1.      Declare that the Defendants' conduct alleged herein violated the First, Fourth, Fifth, Sixth and Eighth and Fourteenth Amendments to the Constitution of the United States, federal law, and the Plaintiff's rights under the New York State Constitution and state common and statutory law in the manner alleged herein, upon the evidence adduced at trial or otherwise;

2.      Certify to the Attorney General of the State of New York under 28 U.S.C §2403(b) that the case presents the constitutionality in question of Section 240.26(3) of the New York Penal Code;

3.      Declare that Section 240.26(3) of the New York Penal Code is unconstitutional pursuant to the First Amendment of the United States Constitution;

4.      Award the Plaintiff damages in an amount of no less than $30,000,000;

5.      Award the Plaintiff punitive damages in a yet undetermined amount for the Defendants' willful and malicious violations of the Plaintiff's rights;

6.      Award the Plaintiff reasonable attorneys' fees and costs as authorized under 42 U.S.C. § 1988; and

7.  Grant such other further and different relief as the Court deems just and proper.

**I declare under penalty of perjury that the foregoing is true and correct.**

Signed this 12th day of December, 2014.

_____
Signature of Plaintiff

Sean Sullivan
General Delivery
New York, New York 10001-9999
Sullivan9499@gmail.com
(917) 279-2912