UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------------X
                                        :

SEAN SULLIVAN,                             :
                                          :
                 Plaintiff,            :        14-CV-1334 (JMF)
                                          :
          -v-                           :        OPINION AND ORDER
                                          :

THE CITY OF NEW YORK, et al.,           :
                                          :
                 Defendants.          :
                                          :
--------------------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED:  08/25/2015

JESSE M. FURMAN, United States District Judge:

       Plaintiff Sean Sullivan brings suit against several defendants pursuant to Title 42, United

States Code, Section 1983 and New York State law.  This Opinion and Order addresses

Plaintiff's claims against two of those defendants: the New York City Criminal Justice Agency

("CJA") and one of its employees, Jane Doe # 1 ("Jane Doe" and, together with the CJA, the

"CJA Defendants"), for alleged violations of his rights under the Fifth, Sixth, and Eighth

Amendments to the United States Constitution, and for negligence and failure to train and

supervise under New York State law.  On March 19, 2015, the Court dismissed those claims

pursuant to Rules 12(b)(6) and 41(b) of the Federal Rules of Civil Procedure after Plaintiff gave

every indication that he had abandoned them.  (Docket No. 84).  On April 1, 2015, however,

Plaintiff filed a motion for reconsideration of the Court's Order of Dismissal.  (Docket No. 91).

By Order entered June 12, 2015, the Court denied Plaintiff's motion for reasons to be stated "in

an opinion to be filed in due course."  (Docket No. 107).  This is that opinion.

## BACKGROUND

The background relevant to Plaintiff's motion can be stated briefly.  Because the issues before the Court stem from the CJA Defendants' motion to dismiss, the facts are taken from Plaintiff's operative complaint and assumed to be true.  *See, e.g., Gonzalez v. Hasty*, 651 F.3d 318, 321 (2d Cir. 2011).  Plaintiff is an "unemployed attorney" who resides in the Southern District of New York.  (Second Am. Compl. (Docket No. 55) ("SAC") ¶ 3).  On November 28, 2012, Plaintiff was arrested outside the apartment of his then-wife, from whom he was estranged, by a group of police officers who are also defendants in this case.  (SAC ¶ 26).  He was then taken to the local police station where he was "compelled" to sit for an interview with Jane Doe, a CJA employee.  (SAC ¶¶ 29-30).  The CJA is a non-profit organization that conducts bail interviews and makes recommendations regarding bail under a contract with New York City, *see* New York Criminal Justice Agency Inc., *2013 Annual Report* 4, *available at* http://issuu.com/ csdesignworks/docs/annualreport13?e=2550004/10499680#search ("CJA 2013 Annual Report").[1]  The following day, while he was apparently still in custody and after a court-appointed attorney had been assigned to him, Plaintiff was "compelled" to sit for a second interview with Jane Doe; his newly appointed attorney did not participate in the interview.  (SAC ¶ 30).  Following the interview, Plaintiff appeared at a bail hearing at which he "was not recommended for release on his own recognizances by the . . . CJA" (although it is not clear

---

[1]     Although the CJA's 2013 Annual Report is not included in SAC, it is referenced multiple times and "quoted at some length . . . and therefore incorporated by reference" in the SAC.  *In re Sotheby's Holdings, Inc.*, No. 00-CV-1041 (DLC), 2000 WL 1234601, at *1 n.1 (S.D.N.Y. Aug. 31, 2000).  Accordingly, the Court may consider it in deciding the present motion.  *See, e.g.*, *id.* (considering documents relied upon in the complaint to support an allegation not expressly pleaded in the complaint); *see also San Leandro Emergency Med. Grp. Profit Sharing Plan v. Philip Morris Companies, Inc.*, 75 F.3d 801, 809 (2d Cir. 1996) (considering the full text of a document partially quoted in the complaint).

from the face of the SAC what, if anything, the CJA recommended).  (SAC ¶ 30).  The judge presiding over the bail hearing apparently felt "compelled" not to release Plaintiff on his own recognizances in the absence of such recommendation by the CJA.  The judge ultimately required Plaintiff to post $750 bail before being released.  (SAC ¶ 30).  Plaintiff lacked the financial resources to make this payment and therefore did not post bail.  (SAC ¶ 30).

On February 27, 2014, Plaintiff filed suit against the CJA Defendants and the City of New York (the "City"), the Warden of the New York City Police Department, the Warden of Rikers Island Correction Facility, as well as several individual members of the New York City Police Department ("NYPD"), the New York City Department of Corrections, and the Kings County District Attorney's Office, alleging, among other things, violations of his rights under the U.S. Constitution, the New York State Constitution, and New York law.  (Docket No. 2).  On April 11, 2014, the Court *sua sponte* dismissed Plaintiff's claims against the CJA Defendants on the ground that they were non-suable agencies of the City .  (Docket No. 6).  Plaintiff then filed a motion for reconsideration of that decision, which the Court granted, "if only out of an abundance of caution and without prejudice to the CJA Defendants filing a motion to dismiss. (Docket No. 17, at 3).  The CJA Defendants filed such a motion on January 12, 2015 (after an earlier motion was denied as moot based on Plaintiff's amendment of his complaint), and the Court issued an order setting February 12, 2015, as the deadline for Plaintiff's opposition. (Docket No. 62).  On February 20, 2015, eight days after Plaintiff's opposition had been due, the CJA Defendants filed a letter requesting that their motion be deemed unopposed.  (Docket No. 64).  Three days later, the Court ordered Plaintiff to show cause in writing by March 9, 2015, why his motion should not be deemed unopposed.  (Docket No. 65).  The Court expressly warned Plaintiff that "[f]ailure to show such good cause or *otherwise indicate an intention to*

*proceed with his claims* against the New York City Criminal Justice Agency and Jane Doe will result in Defendants' motion being deemed unopposed and may result in dismissal of the claims against those Defendants for failure to prosecute pursuant to Rule 41 of the Federal Rules of Civil Procedure."  (Docket No. 65 (emphasis added)).  Plaintiff did not respond to the CJA Defendants' letter or to the Court's order to show cause.  Significantly, however, he continued to actively litigate the case with respect to the other Defendants.  For example, on March 16, 2015, he filed a motion for expanded discovery and an affirmation in support of that motion.  (Docket Nos. 80-81).

Three days later, on March 19, 2015, the Court dismissed the claims against the CJA Defendants by Order of Dismissal.  (Docket No. 84).  The operative paragraph of the Court's Order stated as follows:

> Upon review of Defendants' motion papers, the motion is GRANTED and all claims against Jane Doe #1 and CJA are dismissed, *both for failure to prosecute and substantially for the reasons stated in Defendants' memorandum of law*.  (Docket No. 60).  Among other things, Plaintiff's Sixth Amendment claims fail because the right to counsel provided by the Sixth Amendment does not attach until "the initiation of adversary judicial criminal proceedings — whether by way of formal charge, preliminary hearing, indictment, information, or arraignment," *Rothgery v. Gillespie Cnty., Tex.*, 554 U.S. 191, 198 (2008) (internal quotation marks omitted), and Plaintiff's interview with Jane Doe #1 took place prior to that point.  (*See* Second Am. Compl. (Docket No. 55) ¶¶ 29-31).  Next, Plaintiff's Eighth Amendment claims fail because, among other things, he has not pleaded facts alleging the personal involvement of Jane Doe #1 in setting Plaintiff's bail or facts suggesting that CJA has a policy or practice of recommending, let alone imposing, excessive bail.  *See, e.g.*, *Spavone v. N.Y. State Dep't of Corr. Servs.*, 719 F.3d 127, 135 (2d Cir. 2013); *Roe v. City of Waterbury*, 542 F.3d 31, 36 (2d Cir. 2008) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690-91, (1978)).  Finally, Plaintiff's state law claims for negligent training and supervision fail because, among other things, Plaintiff has not pleaded any facts suggesting that CJA "knew or should have known of the employee's propensity for the conduct which caused the injury."  *S.C. v. NYC Dept. of Educ.*, 949 N.Y.S. 2d 71, 71 (App. Div. 2d Dep't 2012) (internal quotation marks omitted).

(*Id.* (emphasis added)).  The Court also declined to grant leave to amend the complaint *sua sponte*, noting that amendment would be futile and that while Plaintiff had previously been granted leave to amend he given no indication that he was in possession of facts that would cure the problems identified in the motion to dismiss.  (*Id.*).  This motion followed.[2]

## LEGAL STANDARDS

Motions for reconsideration are governed by Federal Rule of Civil Procedure 59(e) and Local Civil Rule 6.3, which are meant to "ensure the finality of decisions and to prevent the practice of a losing party examining a decision and then plugging the gaps of a lost motion with additional matters."  *Medisim Ltd. v. BestMed LLC*, No. 10-CV-2463 (SAS), 2012 WL 1450420, at *1 (S.D.N.Y. Apr. 23, 2012) (internal quotation marks omitted).  A district court "has broad discretion in determining whether to grant a motion [for reconsideration]."  *Baker v. Dorfman*, 239 F.3d 415, 427 (2d Cir. 2000).  Such a motion "is appropriate where 'the moving party can point to controlling decisions or data that the court overlooked — matters, in other words, that might reasonably be expected to alter the conclusion reached by the court.'"  *Medisim*, 2012 WL 1450420, at *1 (quoting *In re BDC 56 LLC*, 330 F.3d 111, 123 (2d Cir. 2003)).  "'The major grounds justifying reconsideration are an intervening change in controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice.'"  *Terra Sec. ASA Konkursbo v. Citigroup, Inc.*, 820 F. Supp. 2d 558, 560 (S.D.N.Y. 2011) (quoting *Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992)).

In deciding a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a court must accept all facts set forth in the complaint as true and draw all reasonable

---

[2]     Plaintiff and the other Defendants — the City of New York and various members of the NYPD — have since completed discovery; on August 14, 2015, those Defendants filed a motion for summary judgment.  (Docket No. 118).

inferences in the plaintiff's favor.  *See, e.g.*, *Burch v. Pioneer Credit Recovery, Inc.*, 551 F.3d 122, 124 (2d Cir. 2008) (per curiam).  Significantly, however, the Supreme Court has made clear that a court should not accept as true *non*-factual matter or "conclusory statements" set forth in a complaint.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 686 (2009).  Instead, a court must follow a two-step approach in assessing the sufficiency of a complaint in the face of a Rule 12(b)(6) motion.  *See id.* at 680-81.  First, the court must distinguish between facts, on the one hand, and "mere conclusory statements" or legal conclusions on the other hand; the latter are not entitled to the presumption of truth and must be disregarded.  *Id.* at 678-79.  Second, the court must "consider the factual allegations in [the complaint] to determine if they plausibly suggest an entitlement to relief."  *Id.* at 681.  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)).  A plaintiff must show "more than a sheer possibility that a defendant acted unlawfully," *id.*, and cannot rely on mere "labels and conclusions" to support a claim, *Twombly*, 550 U.S. at 555.  If the plaintiff's pleadings "have not nudged [his or her] claims across the line from conceivable to plausible, [the] complaint must be dismissed."  *Twombly*, 550 U.S. at 570.

As noted, Plaintiff is a licensed attorney who is proceeding *pro se*.  (SAC ¶ 3).  Although the pleadings of *pro se* parties are typically "held to less stringent standards than formal pleadings drafted by lawyers," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (internal quotation marks omitted), "*pro se* attorneys . . . 'cannot claim [this] special consideration,'" *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 82 n.4 (2d Cir. 2001) (quoting *Harbulak v. Cnty. of Suffolk*, 654 F.2d 194, 198 (2d Cir. 1981)); *see also Tracy v. Freshwater*, 623 F.3d 90, 102 (2d Cir. 2010) (collecting cases supporting the proposition that "a lawyer representing himself ordinarily

receives no [special] solicitude"); *Fenner v. City of N.Y.*, No. 08-CV-2355 (BMC)(LB), 2009
WL 5066810, at *3 (E.D.N.Y. Dec. 21, 2009) ("Although *pro se* litigants are generally entitled
to a broad reading of their submissions because of their lack of familiarity with the law, that is
not the case with attorneys who have chosen to proceed *pro se*.  It is well settled in the Second
Circuit that since the reason for affording *pro se* litigants special deference is not present when
the litigant is an attorney, no special consideration is required." (citation omitted)).  Indeed,
courts within this Circuit have observed that it would be "fundamentally unfair" to extend the
special solicitude typically afforded *pro se* parties to pleadings drafted by lawyers.  *See, e.g.*, *CIT
Grp./Commercial Servs., Inc. v. Prisco*, 640 F. Supp. 2d 401, 407 (S.D.N.Y. 2009).  Thus, the
Court will not do so here.

## DISCUSSION

In his motion for reconsideration, Plaintiff takes issue with each of the bases of the
Court's Order of Dismissal.  First, asserting that he had "no affirmative duty to submit written
opposition" to the CJA Defendants' motion to dismiss, he contends that the Court erred in
dismissing his claims for failure to prosecute.  (Pl.'s Mem. Law Supp. Mot. Reconsideration
Court's Order Granting Relief Requested Mot. To Dismiss Filed on Behalf Defs. N.Y.C.
Criminal Justice Agency & Jane Doe #1 (Docket No. 92) ("Pl.'s Mem") 10-11).  Second, he
argues that his Complaint states valid claims against the CJA Defendants and that the Court erred
in concluding otherwise.  (*Id.* at 11-24).  Plaintiff is wrong on both counts.

### A.    Dismissal for Failure To Prosecute

First, the Court did not err in dismissing Plaintiff's claims against the CJA Defendants for
failure to prosecute.  As discussed above, the totality of the circumstances clearly indicated that
Plaintiff had abandoned his claims against the CJA Defendants.  Those Defendants filed their

motion to dismiss on January 12, 2015.  (Docket No. 58).  When Plaintiff — who, it must be

remembered, is a lawyer — failed to respond to that motion by the February 12, 2015 deadline,

the Court issued an order to show cause why the motion should not be deemed unopposed, and

expressly warned Plaintiff that "[f]ailure to show such good cause or *otherwise indicate an*

*intention to proceed with his claims* . . . may result in dismissal of the claims against those

Defendants for failure to prosecute pursuant to Rule 41 of the Federal Rules of Civil Procedure."

(Docket No. 65 (emphasis added)).  Plaintiff did not respond to the order to show cause and gave

no indication of an intention to proceed with his claims against the CJA Defendants.  At the same

time, Plaintiff continued to actively litigate the case, but only against the *other* Defendants.

(Docket Nos. 80-81).  Under the circumstances, the Court could properly deem Plaintiff to be

pursuing his claims against those other Defendants, but to have abandoned his claims against the

CJA Defendants — in much the same way that it could properly deem a represented party to

have abandoned claims if, in opposing a motion to dismiss multiple claims, it addressed only

some of them.  *See, e.g.*, *Jackson v. Federal Exp.*, 766 F.3d 189, 194-95 (2d Cir. 2014) (holding

that "a partial response arguing that summary judgment should be denied as to some claims

while not mentioning others may be deemed an abandonment of the unmentioned claims" by a

counseled party); *Romeo & Juliette Laser Hair Removal, Inc. v.  Assara I LLC*, No. 08-CV-442

(TPG) (FM), 2014 WL 4723299, at *7 (S.D.N.Y. Sept. 23, 2014) ("At the motion to dismiss

stage . . . , a plaintiff abandons a claim by failing to address the defendant's arguments in support

of dismissing that claim."); *In re Refco Capital Markets, Ltd. Brokerage Customer Sec. Litig.*,

No. 06-CV-643 (GEL), 2007 WL 2694469, at *6 (S.D.N.Y. Sept. 13, 2007) (observing that

where a plaintiff's memorandum in opposition to a motion to dismiss defends claims against

only some defendants, the plaintiff may be deemed to have "abandoned [the] claims against those defendants" that the plaintiff did not address).

In arguing otherwise (Pl.'s Mem. 10), Plaintiff relies principally on *McCall v. Pataki*, 232 F.3d 321 (2d Cir. 2000), which held that, "[i]f a complaint is sufficient to state a claim on which relief can be granted, the plaintiff's failure to respond to a Rule 12(b)(6) motion does not warrant dismissal." *Id.* at 323.  Plaintiff, however, misunderstands the basis for the Court's Order of Dismissal in this case.  The Court did not dismiss Plaintiff's claims solely because he failed to respond to the motion to dismiss, as the district court had done in *McCall*.  Instead, it did so because the totality of the circumstances — the fact that Plaintiff is a lawyer, that he failed to respond to the motion to dismiss, that he was ordered to show cause for his failure and expressly warned that his claims could be dismissed if he did not indicate some intention to proceed with them, that he ignored the Court's order and gave no such indication, and that he simultaneously continued to press his claims against other Defendants — indicated that he had abandoned his claims.  Just as a counseled party's partial opposition to a motion "may imply an abandonment of some claims," *Jackson*, 766 F.3d at 196, a party's pursuit of some claims but not others (at least where, as here, that party is a lawyer) may imply an abandonment of the latter.  "[P]arties are always free to abandon some" of their claims, and "[w]here abandonment . . . is not explicit but such an inference may be fairly drawn from the papers and circumstances viewed as a whole, district courts may conclude that abandonment was intended." *Id.*  Such was the case here. For similar reasons, Plaintiff's reliance on *Baptiste v. Sommers*, 768 F.3d 212 (2d Cir. 2014) (per curiam) (Pl.'s Mem. 10-11), is misplaced.  *Baptiste* held that a district court must weigh five factors before dismissing a case in its entirety for failure to prosecute pursuant to Rule 41(b) of the Federal Rules of Civil Procedure: (1) the duration of the plaintiff's failure to comply with the

court order, (2) whether plaintiff was on notice that failure to comply would result in dismissal, (3) whether the defendants are likely to be prejudiced by further delay in the proceedings, (4) a balancing of the court's interest in managing its docket with the plaintiff's interest in receiving a fair chance to be heard, and (5) whether the judge has adequately considered a sanction less drastic than dismissal. *See Baptiste*, 768 F.3d at 216.  To the Court's knowledge, however, the Second Circuit has never suggested that discussion of those factors is required where there are signs that a plaintiff has affirmatively abandoned all his claims — let alone where, as here, there is reason to conclude that the plaintiff has abandoned a subset of his claims.  Indeed, courts regularly deem claims to have been abandoned without engaging in an analysis of the factors discussed in *Baptiste*.  *See, e.g.*, *Jackson v. Fed. Exp.*, 766 F.3d at 198 (holding that where a represented party — and, by extension, presumably an attorney proceeding *pro se*, as here — pursues some claims, but not others, the "claims . . . that are not defended have been abandoned"); *Silverman v. Household Fin. Realty Corp. of New York*, 979 F. Supp. 2d 313, 317 (E.D.N.Y. 2013) (finding that, where the plaintiffs defended only some of the claims that the defendants moved to dismiss, the claims not defended were abandoned ); *Reid v. Ingerman Smith LLP*, 876 F. Supp. 2d 176, 186 (E.D.N.Y. 2012) (concluding that where the plaintiff responded to a motion to dismiss by defending a claim against certain defendants, but not others, that the claims not defended were abandoned); *Shady Records, Inc. v. Source Enter., Inc.*, 371 F. Supp. 2d 394, 396 (S.D.N.Y. 2005) (observing that regardless of "whether [the plaintiff's] claims had merit, [those issues are] now moot in light of [the plaintiff's] willingness to abandon those claims totally and forever").  That is for good reason. Requiring a court to engage in a thorough discussion of the five *Baptiste* factors every time a plaintiff appears to have abandoned certain

claims while litigating others would consume significant judicial resources with little or no apparent purpose.

It is certainly true that "the sufficiency of a complaint is a matter of law that the court is capable of determining based on its own reading of the pleading and knowledge of the law." *McCall*, 232 F.3d at 322-23.  Neither logic nor the law, however, requires a court to expend its limited resources reviewing the sufficiency of a plaintiff's claims where, as here, all signs indicate that the plaintiff has abandoned them.  On that basis alone, Plaintiff's motion fails.

**B.     Dismissal for Failure To State a Claim**

In any event, the Court *did* review the sufficiency of Plaintiff's claims against the CJA Defendants in its Order of Dismissal, and found they fell short "substantially for the reasons stated in Defendants' memorandum of law."  (Docket No. 84 (citing Mem. Law Support Defs.' Mot. To Dismiss Second Am. Compl. (Docket No. 60) ("Defs.' Mem.")).  Plaintiff takes issue with that conclusion as well, arguing that he stated plausible claims against the CJA or Jane Doe for violations of the Fifth, Sixth, and Eighth Amendments, for municipal liability under *Monell*, and for negligence and failure to train under New York state law.  Here too, Plaintiff presents no basis for reconsideration.

**1.      Plaintiff's Claims Under the Fifth and Sixth Amendments**

Plaintiff alleges first that the CJA Defendants violated his Sixth Amendment rights by conducting his second bail interview outside the presence of counsel.  (SAC ¶ 65).  It is well established, however, that the Sixth Amendment right to counsel does not attach until "the first appearance [by the accused] before a judicial officer at which a defendant is told of the formal accusation against him and restrictions are imposed on his liberty."  *Rothgery v. Gillespie Cnty.*, 554 U.S. 191, 194 (2008).  The Second Circuit has expressly held that the Sixth Amendment

right does not attach to questioning, even questioning by the police, in advance of the point at which "'the government has committed itself to prosecute' [as it is then] that 'the adverse positions of government and defendant have solidified.'"  *United States v. Moore*, 670 F.3d 222, 234 (2d Cir. 2012) (quoting *Rothgery*, 554 U.S. at 198).  Here, as the Court noted in its original Order of Dismissal, the Complaint makes clear that the bail interview took place *prior* to the filing of an accusatory instrument against Plaintiff.  (SAC ¶ 30).  Plaintiff's Sixth Amendment right to counsel therefore had not attached at the time of his interview with Jane Doe, and he cannot state a claim for a violation of the Sixth Amendment.  *See, e.g.*, *Wims v. New York City Police Dep't*, No. 10-CV-6128 (PKC), 2011 WL 2946369, at *5 (S.D.N.Y. July 20, 2011) (dismissing a Section 1983 claim for violation of the Sixth Amendment because "plaintiff's complaint alleges only a lack of representation during his initial interrogation before arraignment"); *Nimkoff v. Dollhausen*, 751 F. Supp. 2d 455, 465 (E.D.N.Y. 2010) (dismissing a Sixth Amendment claim under Section 1983 upon determining that the right to counsel had not yet attached at the time of the events in question); *Simms v. De Paolis*, No. 99-CV-2776 (AKH), 2000 WL 1134564, at *4 (S.D.N.Y. Aug. 9, 2000) (same).

Plaintiff also argues that because he allegedly did not waive his right to counsel during the interviews with Jane Doe, the CJA's bail recommendation that followed (which allegedly "compelled" the judge to impose bail rather than releasing Plainitff on his own recognizance) violated his privilege against self-incrimination under the Fifth Amendment.  (SAC ¶ 30; Pl.'s Mem. 12).  Putting aside whether the Fifth Amendment applies in this context, however, it is well established that mere violations of *Miranda v. Arizona*, 384 U.S. 436 (1966), do not — absent coercion — rise to the level of constitutional violations actionable under Section 1983. *See, e.g.*, *Jocks v. Tavernier*, 316 F.3d 128, 138 (2d Cir. 2003); *see also, e.g.*, *Neighbour v.*

*Covert*, 68 F.3d 1508, 1510-11 (2d Cir. 1995) (stating that "[t]he remedy for a *Miranda* violation

is the exclusion from evidence of any ensuing self-incriminating statements" and "not a [civil

rights] action" (citation omitted)).  Here, although Plaintiff states in conclusory fashion that he

was "compelled" to sit for the interviews with Jane Doe (SAC ¶ 30), he fails to allege any facts

supporting the conclusion that he was coerced.  *See, e.g.*, *Dickerson v. United States*, 530 U.S.

428, 434 (2000) (stating that, to determine whether a statement was coerced, a court must

"examine[] 'whether a defendant's will was overborne' by the circumstances surrounding the

giving of a confession[,] . . . tak[ing] into consideration 'the totality of all the surrounding

circumstances — both the characteristics of the accused and the details of the interrogation.'"

(quoting *Schneckloth v. Bustamonte*, 412 U.S. 218, 226 (1973)); *see also, e.g.*, *Nelson v. Walker*,

121 F.3d 828, 833 (2d Cir. 1997) (citing factors to be considered as part of the "careful

evaluation of the totality of the surrounding circumstances" required to determine whether a

confession was obtained by coercion (internal quotation marks omitted)).  Plaintiff's "naked

assertion[,] devoid of further factual enhancement" that he was compelled to sit for the interview

is patently insufficient to state a plausible claim under Section 1983 and the Fifth Amendment.

*Iqbal*, 556 U.S. at 678 (internal quotation marks omitted).

### 2.    Plaintiff's Claims Under the Eighth Amendment

Next, the Court turns to Plaintiff's Eighth Amendment claim.  He contends that the $750

bail requirement was unconstitutional because it was more than necessary to ensure that he was

not a flight risk and that Jane Doe is liable for the violation of his rights because her

recommendation "proximate[ly] cause[d]" the judge to set bail at that level.  (Pl.'s Mem. 18; *see*

SAC ¶ 67).  Bail is constitutionally excessive when it is "set at a figure higher than an amount

reasonably calculated to fulfill [its] purpose," *Stack v. Boyle*, 342 U.S. 1, 5 (1951), namely

"ensuring a defendant's appearance in court or protecting the welfare of the community against future dangerousness," *United States v. Karper*, 847 F. Supp. 2d 350, 362 (N.D.N.Y. 2011). Plaintiff contends that his bail was more than reasonably necessary as evidenced by the fact that he "was homeless, had minimal financial assets, was a university graduate without a criminal record, and was arrested when visiting his daughter." (Pl.'s Mem. 18; *see also* Second Am. Compl. ¶ 67 (contending that Plaintiff should have been released on his own recognizance because he had no criminal history and was not charged with a violent offense)).

Plaintiff cannot state a claim for excessive bail against Jane Doe or indeed any CJA employee. In New York, the decision to set bail — and the amount at which it is set — is made by and at the discretion of the presiding judge. *See, e.g.*, N.Y. Crim. Proc. L. § 530.10 *et seq.*; *see also In re Bauer*, 3 N.Y.3d 158, 163 (2004) (observing that "bail is discretionary and that there may be a wide range in the amounts set by reasonable judges"). Because the power to set bail is vested solely in the presiding judge, there can be no Eighth Amendment liability for a person who merely makes a recommendation regarding the appropriate level of bail. *See Walden v. Carmack*, 156 F.3d 861, 874 (8th Cir. 1998) (holding that a Sheriff was not liable under the Eighth Amendment for his bail recommendation to the judicial officer who ultimately set bail); *accord Galen v. Cnty. of Los Angeles*, 477 F.3d 652, 663 (9th Cir. 2007) (holding that a police officer could not be held liable under the plaintiff's excessive bail theory). Accordingly, as the Court concluded in its Order of Dismissal, Plaintiff's Eighth Amendment claim against the CJA Defendants fails as a matter of law.

### 3. Qualified Immunity

In any event, even if the Court were to conclude that Plaintiff had stated a viable theory under the Fifth, Sixth, or Eighth Amendments, his Section 1983 claim would nevertheless fail

because Jane Doe is protected by qualified immunity.  In general, qualified immunity shields

government officials from civil suits for damages "insofar as their conduct does not violate

clearly established statutory or constitutional rights of which a reasonable person would have

known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982).  To qualify as "clearly established," a

right "must be sufficiently clear that every reasonable official would have understood that what

he is doing violates that right." *Reichle v. Howards*, — U.S. —, 132 S. Ct. 2088, 2093 (2012)

(internal quotation marks omitted); *accord Raspardo v. Carlone*, 770 F.3d 97, 113 (2d Cir.

2014).  Put another way, existing precedent of the Supreme Court and Second Circuit "must have

placed the . . . constitutional question . . . *beyond debate.*" *Plumhoff v. Rickard*, — U.S. —, 134

S. Ct. 2012, 2023 (2014) (emphasis added) (internal quotation marks omitted).  The inquiry

"must be undertaken in light of the specific context of the case, not as a broad general

proposition." *DiStiso v. Cook*, 691 F.3d 226, 229 (2d Cir. 2012) (internal quotation marks

omitted).  Further, in the Rule 12(b)(6) context, the facts supporting the defense of qualified

immunity must appear on the face of the complaint; even then, a motion to dismiss may be

granted on qualified immunity grounds only if the plaintiff fails to plausibly allege a claim for

relief.  *See, e.g.*, *Looney v. Black*, 702 F.3d 701, 710 (2d Cir. 2012); *McKenna v. Wright*, 386

F.3d 432, 436 (2d Cir. 2004).

      Here, given the Court's conclusion that Plaintiff does not even state a claim for violation

of the Fifth, Sixth, or Eighth Amendments, it follows that a reasonable person in Jane Doe's

position would not have understood that what she did violated Plaintiff's constitutional rights.

*See, e.g.*, *Saucier v. Katz*, 533 U.S. 194, 202 (2001) ("The relevant, dispositive inquiry in

determining whether a right is clearly established is whether it would be clear to a reasonable

officer that his conduct was unlawful in the situation he confronted.").  And while it is true that

Jane Doe was not herself a government employee (Pl.'s Mem. 20; *see also* Defs.' Mem. 15 n.7),

the Supreme Court has held that qualified immunity extends to a person who is retained by the

government to perform services that, if performed by a government official, would be shielded

from suit.  *See Filarsky v. Delia*, — U.S. —, 132 S. Ct. 1657, 1667 (2012); *see id.* at 1655

("[Qualified] immunity under § 1983 should not vary depending on whether an individual

working for the government does so as a full-time employee, or on some other basis.").  That is

the case here.  The CJA is a not-for-profit entity under contract with the City of New York to aid

the City's administration of the criminal justice system by, among other things, performing bail

interviews (*see* SAC ¶ 16; CJA 2013 Annual Report 4), and Jane Doe's allegedly

unconstitutional activity took place during one of these interviews.  There is no question that if

the City had hired Jane Doe directly, rather than through contract with the CJA, she would be

entitled to qualified immunity.[3]  Accordingly, Jane Doe is eligible for qualified immunity just as

if she had been hired directly by the City.  *See P.P. v. City of New York*, No. 13-CV-5049 (CM)

(FM), 2014 WL 4704800, at *19-20 (S.D.N.Y. Sept. 19, 2014) (applying *Filarsky* to find that

qualified immunity protects the employees of "private foster-care homes under contract with a

---

[3]      The fact that the CJA is a not-for-profit entity whose only client is the City of New York
(CJA 2013 Annual Report 4) distinguishes this case from the Supreme Court's "self-consciously
'narrow[]' decision" in *Richardson v. McKnight*, 521 U.S. 399, 409 (1997), in which the Court
— before *Filarsky* — denied qualified immunity to private prison guards after concluding that
"incentives characteristic of the private market" would "ensure[] that the guards would not
perform their public duties with unwarranted timidity or be deterred from entering that line of
work."  *Filarsky*, 132 S. Ct. at 1667 (first alteration in original) (quoting *Richardson*, 521 U.S. at
410-411).  In *Filarksy*, the Court concluded that the same incentives were unlikely to exist where
a person performing work on behalf of the government was not employed by a "private firm,
systematically organized to assume a major lengthy administrative task . . . for profit and
potentially in competition with other firms."  *Id.* (internal quotation marks omitted).  Needless to
say, Jane Doe and the CJA bear little or no resemblance to the private prison guards and
company at issue in *Richardson*.

municipality"); *Braswell v. Shoreline Fire Dep't*, No. C08-924-RSM, 2012 WL 1857858, at *7 (W.D. Wash. May 22, 2012) (applying *Filarsky* to conclude that a doctor hired by the State to oversee individuals licensed to practice paramedicine was entitled to qualified immunity).[4]

### 4. Plaintiff's *Monell* Claims

Next, Plaintiff brings claims for municipal liability under *Monell*. (SAC ¶¶ 47-56). Given the absence of an underlying constitutional violation, however, Plaintiff cannot state a claim under *Monell*. *See, e.g.*, *Schultz v. Inc. Vill. of Bellport*, 479 F. App'x 358, 360 (2d Cir. 2012) (summary order) ("Because [Plaintiff] was unable to establish an underlying violation of his constitutional rights . . . his . . . *Monell* claim necessarily fail[s] as well."). Additionally, it is well established that, in order to establish a claim under *Monell*, a plaintiff must allege that the violation of his constitutional rights resulted from a municipal policy, custom, or practice. *See Monell,* 436 U.S. at 690-91. "Proof of a single incident of unconstitutional activity is not sufficient to impose liability under *Monell*." *City of Oklahoma v. Tuttle*, 471 U.S. 808, 823-24 (1985) (plurality opinion). In this case, however, Plaintiff fails to allege any facts from which the Court could conclude that the CJA (assuming *arguendo* that it even falls within the scope of *Monell*) had a policy, custom, or practice that gave rise to the alleged violations of Plaintiff's constitutional rights. (*See* SAC ¶¶ 67-68). Plaintiff does assert in conclusory fashion that his

---

[4]     In fact, the only real question is whether Jane Doe exercised a sufficiently judicial role through her bail recommendation that she is entitled to *absolute* immunity. *See Ippolito v. Justice Serv. Div.*, No. 13-CV-03480-BNB, 2014 WL 459757, at *2 (D. Colo. Feb. 4, 2014) (holding that "[a] pre-trial services case manager is entitled to absolute prosecutorial immunity for her conduct in presenting a lab report to the state district court, with a recommendation that the defendant's bail bond be revoked" and is "not liable under 42 U.S.C. § 1983 based on [her] recommendation . . . that Plaintiff's bond be revoked"), *aff'd*, 562 F. App'x 690 (10th Cir. 2014); *cf. Sanchez v. Doyle*, 254 F. Supp. 2d 266, 272 (D. Conn. 2003) (finding that absolute immunity extended to a police officer making bail determinations in part because of his role in conducting interviews for the purposes of setting bail and making recommendations to the state's attorney's office). Nevertheless, the Court need not — and does not — address that question here.

17

treatment was pursuant to the CJA's "de facto policies, practices, and customs to impose excessive bail conditions" as well as its "failure to properly train, screen, supervise, or discipline employees" (SAC ¶ 68), but he does not allege any facts to support those assertions. That does not suffice to state a claim under *Monell*. *See, e.g.*, *Baines v. City of New York*, No. 10-CV-9545 (JMF), 2014 WL 1087973, at *3 (S.D.N.Y. Mar. 19, 2014) ("[A]bsent extremely severe circumstances, a plaintiff must allege facts — other than those giving rise to individual liability — supporting an inference that the municipality has an unconstitutional policy.").

5.     **Plaintiff's Claims Under New York Law**

Plaintiff's last claims against the CJA and Jane Doe are brought under New York law. Specifically, he asserts claims against the CJA for failure to train and supervise Jane Doe and for negligent hiring and retention of Jane Doe, and a claim against Jane Doe herself for negligence (and a corresponding claim against the CJA under a respondeat superior theory). (SAC ¶¶ 123-25; Pl.'s Mem. 22-23). Plaintiff's claims against the CJA are wholly conclusory and are therefore patently insufficient to survive a motion to dismiss. Indeed, the only claims he makes regarding either supposed violation relate to Jane Doe's alleged errors. But "a single incident is generally insufficient to demonstrate liability under a failure to train theory" or a negligent-hiring theory. *Breitkopf v. Gentile*, 41 F. Supp. 3d 220, 254 (E.D.N.Y. 2014) (internal quotation marks omitted); *see Valentini v. Citigroup, Inc.*, 837 F. Supp. 2d 304, 330 (S.D.N.Y. 2011) (dismissing a claim for negligent supervision where the plaintiffs did not "allege[ ] any facts demonstrating that [the defendants] knew or should have known of their [employees'] propensity for tortious conduct, prior to the wrongdoing alleged in the Complaint"); *see also Rodriguez v. City of New York*, 649 F. Supp. 2d 301, 307 (S.D.N.Y. 2009) (addressing failure-to-train claims under Section 1983 and New York state law using the same standard).

Plaintiff's negligence claim against Jane Doe and his corresponding claim against the CJA also fail as a matter of law. He contends that Jane Doe negligently performed her responsibilities in making a bail recommendation by focusing on his homelessness and not adequately considering other factors, such as his background, ties to the community, lack of a criminal record, and membership in the New York State Bar. (SAC ¶¶ 30, 67; Pl.'s Mem. 22-23). To state a claim for negligence under New York law, Plaintiff must adequately plead the existence of a duty, a breach of that duty by the defendant, and that the breach proximately caused the Plaintiff to suffer harm. *See, e.g.*, *Baptiste v. N.Y.C. Transit Auth.*, 28 A.D.3d 385, 386 (App. Div. 1st Dep't 2006). Plaintiff, however, does not cite any authority even suggesting that he was owed a duty by Jane Doe, let alone that Jane Doe's failure to adequately consider certain factors represented a breach of that duty. Indeed, although no New York State court appears to have addressed the question, it would seem that any duty on the part of Jane Doe would be owed to the judge to whom her recommendation was directed rather than to Plaintiff. *Cf. Mali v. De Forest & Duer*, 160 A.D.2d 297, 297-98 (App. Div. 1st Dep't 1990) (holding that a law firm making a recommendation regarding a piece of property owed a duty only to the recipient of that recommendation and not to third parties affected by it). Accordingly, Plaintiff cannot state a viable claim for negligence under New York law.

## C.    Plaintiff's Request for Leave To File an Amended Complaint

Finally, Plaintiff requests leave to file a third amended complaint in order to add allegations regarding Jane Doe's conduct. In particular, he claims to have uncovered evidence that she recorded false and misleading information during his bail interview. (Pl.'s Mem. 23-24). Although Rule 15(a)(2) of the Federal Rules of Civil Procedure provides that courts "should freely give leave" to amend a complaint "when justice so requires," the Court has discretion to

deny a motion to amend where "there is a good reason for it, such as futility, bad faith, undue delay, or undue prejudice to the opposing party." *Jin v. Metro. Life Ins. Co.*, 310 F.3d 84, 101 (2d Cir. 2002). An amendment is "futile" when it could not withstand a motion to dismiss under Rule 12(b)(6). *See, e.g.*, *Anderson News, LLC v. Am. Media, Inc.*, 680 F.3d 162, 185 (2d Cir. 2012). That is the case here. The evidence discussed in Plaintiff's memorandum (Pl.'s Mem. 23) would not change the Court's conclusions that Jane Doe did not commit any constitutional violation, that she is entitled to qualified immunity, and that she did not violate any duty owed to Plaintiff. Accordingly, his request for leave to file a third amended complaint is denied.

## CONCLUSION

For the reasons stated above, Plaintiff's motion for reconsideration is DENIED, as is his request for leave to file a third amended complaint. The Clerk of Court is directed to mail Plaintiff a copy of this Opinion and Order.

SO ORDERED.

Date: August 25, 2015
New York, New York

JESSE M. FURMAN
United States District Judge