```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
                                                                  :
SEAN SULLIVAN,                                                    :
                                                                  :
                           Plaintiff,                             :      14-CV-1334 (JMF)
                                                                  :
            -v-                                                   :      OPINION AND ORDER
                                                                  :
THE CITY OF NEW YORK, et al.,                                     :
                                                                  :
                           Defendants.                            :
                                                                  :
------------------------------------------------------------------X
```

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 06/08/2016

JESSE M. FURMAN, United States District Judge:

Plaintiff Sean Sullivan, an attorney proceeding *pro se* and *in forma pauperis*, sues the City of New York (the "City") and several current or former members of the New York City Police Department — Detective Thomas Markardt, Detective Kevin Dilberian, Lieutenant Robert Rivera, Police Officer Arafat Cooper, Police Officer Marc Mancini, Police Officer Emanuel, and Police Officer Alicha Campbell (collectively, the "Officer Defendants" and, together with the City, "Defendants") — pursuant to Title 42, United States Code, Section 1983 and New York State law. Defendants now move, pursuant to Rule 56 of the Federal Rules of Civil Procedure, for summary judgment on all of Plaintiff's claims. For the reasons that follow, Defendants' motion — unopposed by Plaintiff — is GRANTED.

## BACKGROUND

In this case, the procedural history looms larger than the relevant, undisputed facts. Those facts begin on November 6, 2012, when Plaintiff's ex-wife, from whom he was then separated and has since been divorced, filed a complaint with the New York City Police Department ("NYPD") claiming she felt threatened by, and was afraid of, Plaintiff. (Mem. Law

Supp. Defs.' Mot. For Summ. J. (Docket No. 119) ("Defs.' Mem."), Ex. 2 ("SOF"), ¶ 1; *see* Defs.' Mem., Ex. 1 ("Okoh Decl."), Ex. C ("Police Records"), at NYC0015-NYC0016). Specifically, she complained that Plaintiff "made numerous phone calls and text messages to her cell phone," that she felt "very threatened," and that she was "concerned and afraid of what he could do to [her] and [their] daughter" — a minor over whom she has custody. (Police Records at NYC0016; Okoh Decl., Ex. B ("Pl.'s Dep."), at 59). Detective Mancini, a Defendant here, personally observed texts from Plaintiff to his ex-wife calling her "a 'dirty whore' stupid and scumbag." (Police Records at NYC0016). The next day, in a telephone call with Detective Markardt, another Defendant in this case, Plaintiff's ex-wife stated that, beginning October 28, 2012, and continuing through the day of her complaint, she had received approximately three such "vulgar" messages each day from Plaintiff; she expressed concerns about Plaintiff's "increasingly erratic behavior" and noted that, because he was "undomiciled," she did know where he was staying. (*Id.* at NYC0027). In the course of his investigation, Detective Markadt learned that Plaintiff's ex-wife had, in October 2008, filed another complaint against Plaintiff for aggressive behavior. (SOF ¶¶ 10-11; *see* Police Records at NYC0017-NYC0018). After making further inquiries into Plaintiff's whereabouts (*see* SOF ¶¶ 12, 14), Detective Markadt forwarded his file to Detective Dilberian of the apprehension team (and another Defendant here) for assistance in locating Plaintiff, (*id.* ¶ 15).

In the days leading up to December 2, 2012, Plaintiff exchanged text messages with his ex-wife. (*Id.* ¶ 16). At first, she invited him to meet her and their daughter at a restaurant, but after Plaintiff refused to meet at that location, she invited him to meet them at her apartment. (*Id.* ¶¶ 17-18). On the morning of December 2, 2012, Plaintiff arrived at his ex-wife and daughter's apartment and rang the buzzer; his ex-wife told him to wait outside and, shortly

2

thereafter, he was arrested by several police officers, including Detectives Markadt and Dilberian. (*Id.* ¶ 20; Pl.'s Dep. 39). The police officers took Plaintiff first to their precinct, then to Central Booking, where he was charged with aggravated harassment in the second degree and harassment in the second degree. (SOF ¶¶ 21-22). The judge presiding over the arraignment offered Plaintiff placement in an alternative treatment program for offenders suffering from mental illness or substance abuse, but Plaintiff declined. (*Id.* ¶ 25). He was later indicted, but in June 2013 the charges were dismissed. (*Id.* ¶¶ 25-26; Okoh Decl., Ex. D).

On February 27, 2014, Plaintiff filed this lawsuit, naming as Defendants the City, the Officer Defendants, and various other people and entities. (Docket No. 2). As a result of earlier rulings, the substance of which is not relevant here, the only claims remaining are those against the City and the Officer Defendants. (*See* Docket Nos. 6, 17, 57, 84, 107, 121). *See Sullivan v. City of New York*, No. 14-CV-1334 (JMF), 2015 WL 5025296, at *1 (S.D.N.Y. Aug. 25, 2015); *Sullivan v. City of New York*, No. 14-CV-1334 (JMF), 2014 WL 2722536, at *1 (S.D.N.Y. June 16, 2014), *appeal dismissed* (Sept. 24, 2014). Discovery was scheduled to close five months after the filing of Plaintiff's second amended complaint, in December 2014, and ultimately closed in substantial part by late May 2015. (*See* Docket Nos. 52, 55, 104 (closing discovery as of May 26, 2015, but granting Defendants leave to take Plaintiff's deposition by June 12, 2015)). In response to a request from Plaintiff for additional time in which to complete discovery, however, the Court scheduled a conference for June 18, 2015. (Docket No. 106). Plaintiff failed to appear, leading the Court to order him to submit a letter explaining his request for more discovery and his failure to appear. (*See* Docket No. 108). Thereafter, Plaintiff submitted a letter withdrawing his request for an extension of discovery (Docket No. 109), and discovery was thus closed — unambiguously — on July 7, 2015, (Docket No. 112). Despite that, on August

21, 2015, Plaintiff filed a letter asking the Court to compel Defendants to comply with certain discovery requests. (Docket No. 120). That request was denied by Order entered on August 26, 2015. (Docket No. 123).

Defendants filed their motion for summary judgment on August 14, 2015 — one day after the deadline for such a motion. (*See* Docket No. 117, 119). On August 27, 2015, Plaintiff filed a motion to strike Defendants' motion (based on various procedural and legal objections, including timeliness) or, in the alternative, to extend his time to oppose the motion. (Docket No. 124). The Court granted Plaintiff's request for an extension to oppose summary judgment (until September 28, 2015) and denied his motion to strike "without prejudice to his making the legal and procedural arguments he raises in his opposition to summary judgment"; more specifically, the Court directed him "to include any arguments with respect to procedural defects, including the issue of timeliness, in his opposition to summary judgment." (Docket No. 125). Five days later, Plaintiff filed a motion for reconsideration of that Order, which the Court denied, reiterating that "Plaintiff may raise any objections . . . in his opposition" and that, "[n]otwithstanding Plaintiff's desire for a more immediate ruling, the Court will not resolve his objections at this time, but will instead wait until it has received full briefing on the issues from both sides." (Docket No. 130). Noting that Plaintiff had also filed an affidavit pursuant to Rule 56(d) of the Federal Rules of Civil Procedure claiming that he did not have access to facts he needed to file his opposition (*see* Docket No. 129), the Court explicitly "advise[d] Plaintiff that he must [still] file an opposition by the . . . deadline" because "the Rule 56(d) affidavit does not excuse him from that obligation." (Docket No. 130). Specifically, the Court instructed Plaintiff that, "[t]o the extent [he] believes he does not have access to particular facts necessary to oppose the motion, he should identify those facts with particularity in his opposition and should explain

4

. . . exactly why . . . those facts are needed." (*Id.*). The Court warned Plaintiff that "[f]ailure to file an opposition by September 28 will result in Defendants' motion . . . being deemed unopposed and/or [Plaintiff's] claims being deemed abandoned." (*Id.*).

In spite of the Court's repeated urgings, warnings, and explicit instructions, no opposition to summary judgment ever materialized from Plaintiff — by the September 28, 2015 deadline or at any time since. Instead, on September 28, 2015 — the deadline — Plaintiff filed a "Notice of Motion" seeking "an order denying consideration of the Defendants' Motion for Summary Judgment, pursuant to Rule 56(d) of the Federal Rules of Civil Procedure, so long as the Defendants continue to fail to comply with the Plaintiff's previously-submitted discovery demands." (Docket No. 133). On October 9, 2015, defense counsel submitted a letter requesting that Defendants' summary judgment motion be deemed unopposed. (Docket No. 135). The Court granted that request by memorandum endorsement entered October 13, 2015, and the Clerk of Court mailed a copy of the endorsement to Plaintiff that day. (Docket No. 136). On November 5, 2015, the mailed copy of the Court's memorandum endorsement was returned as unclaimed, and the Court has not received anything further from Plaintiff.

## LEGAL STANDARDS

Summary judgment is appropriate where the admissible evidence and the pleadings demonstrate "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Johnson v. Killian*, 680 F.3d 234, 236 (2d Cir. 2012) (per curiam). A dispute over an issue of material fact qualifies as genuine "if the evidence is such that a reasonable jury could return a judgment for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *accord Roe v. City of Waterbury*, 542 F.3d 31, 35 (2d Cir. 2008). The moving party bears the initial burden of demonstrating the absence of a

5

genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). "In moving for summary judgment against a party who will bear the ultimate burden of proof at trial, the movant's burden will be satisfied if he can point to an absence of evidence to support an essential element of the nonmoving party's claim." *Goenaga v. March of Dimes Birth Defects Found.*, 51 F.3d 14, 18 (2d Cir. 1995) (citing *Celotex*, 477 U.S. at 322-23); *accord PepsiCo, Inc. v. Coca-Cola Co.*, 315 F.3d 101, 105 (2d Cir. 2002) (per curiam). In ruling on a motion for summary judgment, all evidence must be viewed "in the light most favorable to the non-moving party," *Overton v. N.Y. State Div. of Military & Naval Affairs*, 373 F.3d 83, 89 (2d Cir. 2004), and the court must "resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought," *Sec. Ins. Co. of Hartford v. Old Dominion Freight Line, Inc.*, 391 F.3d 77, 83 (2d Cir. 2004).

Typically, when a summary judgment motion is brought against a *pro se* litigant, the Court must afford the non-movant with "special solicitude" in the construction of pleadings and motions and in the enforcement of procedural rules. *See Tracy v. Freshwater*, 623 F.3d 90, 100-04 (2d Cir. 2010) ("[I]n light of the particular difficulties presented by a motion for summary judgment . . . a district court errs by failing to advise a *pro se* litigant of the nature of such a motion and the consequences of failing to respond to it properly."). The Second Circuit has made clear, however, that when, as here, the *pro se* litigant is a *lawyer*, he is "ordinarily" entitled to "no such solicitude at all." *Id.* at 102 (collecting cases); *accord Holtz v. Rockefeller & Co.*, 258 F.3d 62, 82 n.4 (2d Cir. 2001); *see also, e.g.*, *Fenner v. City of N.Y.*, No. 08-CV-2355 (BMC) (LB), 2009 WL 5066810, at *3 (E.D.N.Y. Dec. 21, 2009) ("It is well settled in the Second Circuit that since the reason for affording *pro se* litigants special deference is not present when the litigant is an attorney, no special consideration is required."). Indeed, courts within this

Circuit have observed that it would be "fundamentally unfair" to extend the special solicitude typically afforded *pro se* parties to lawyers. *CIT Grp./Commercial Servs., Inc. v. Prisco*, 640 F. Supp. 2d 401, 407 (S.D.N.Y. 2009); *accord Simpson v. Wells Fargo Bank*, No. 15-CV-1487 (JMF), 2016 WL 393544, at *2 (S.D.N.Y. Feb. 1, 2016).[1]

Notably, even when special solicitude is warranted, it does not "relieve [a] plaintiff of his duty to meet the requirements necessary to defeat a motion for summary judgment." *Jorgensen v. Epic/Sony Records*, 351 F.3d 46, 50 (2d Cir. 2003) (internal quotation marks omitted). Specifically, provided the moving party has met its initial burden of demonstrating the absence of a genuine issue of material fact, a *pro se* party opposing summary judgment must still "come forward with evidence demonstrating that there is a genuine dispute regarding material fact." *Bennett v. Bailey*, No. 07-CV-7002 (PKC), 2010 WL 1459192, at *3 (S.D.N.Y. Apr. 9, 2010). Here, of course, Plaintiff has not come forward with any evidence, as he failed to oppose Defendants' motion. In such circumstances, one might think that a court could enter default judgment or dismiss the plaintiff's case for non-prosecution; after all, if a plaintiff cannot be bothered to litigate his case, it is hard to see why judicial resources, which are limited, should be expended on the case either. But the Second Circuit has made clear that where "a party, whether *pro se* or counseled, fails to respond to an opponent's motion for summary judgment, a district court may not enter a default judgment." *Jackson v. Fed. Exp.*, 766 F.3d 189, 197 (2d Cir. 2014) (internal quotation marks omitted). To be sure, a court need not "write [an] elaborate essay[]"

---

[1]     In an earlier ruling, *see Sullivan*, 2015 WL 5025296, at *4, the Court did not grant Plaintiff any special solicitude on the ground that he is an attorney. (*See* SAC ¶ 3 ("[T]he Plaintiff[] is an unemployed attorney."); Pl.'s Dep. at 31 (Plaintiff stating he graduated from Yale Law School in 1999); *id.* at 18, 62-63 (Plaintiff, proceeding *pro se*, purporting to assert the attorney-client and attorney work-product privileges)). Plaintiff did not object to that aspect of the Court's ruling.

replete with "punctilious detail or slavish tracing of the claims issue by issue." *Id.* (internal quotation marks omitted). But it must "examine the movant's statement of undisputed facts and the proffered record support and determine whether the movant is entitled to summary judgment," thereby creating "a record sufficient to allow an informed appellate review." *Id.*; *see, e.g.*, *id.* at 194 (citing with approval the concise opinion granting an unopposed motion for summary judgment in *Jones v. Lamont*, No. 05-CV-8126 (LAK), 2008 WL 2152130 (S.D.N.Y. May 22, 2008)).

## DISCUSSION

Applying the foregoing standards here, summary judgment is appropriate whether or not Plaintiff is granted special solicitude as a *pro se* litigant. Plaintiff's Complaint alleges a host of federal claims (Second Am. Compl. (Docket No. 55) ("SAC") ¶¶ 38-87) and state claims (*id.* ¶¶ 88-141), but most if not all of his remaining claims against Defendants — including a claim for false arrest, malicious prosecution, and abuse of process — challenge the propriety of his arrest. As a matter of law, each of those claims fail if there was probable cause to arrest and prosecute Plaintiff for an offense. *See, e.g.*, *Betts v. Shearman*, 751 F.3d 78, 81 (2d Cir. 2014) (holding that "because arguable probable cause existed to arrest" the plaintiff, "his claims for false arrest, false imprisonment, abuse of process, and malicious prosecution were properly dismissed").[2] Probable cause to arrest exists if an arresting officer has actual "knowledge or

---

[2] To the extent that Plaintiff brings state-law claims that are not defeated by a showing of probable cause, those claims fail because there is no evidence that Plaintiff filed a notice of claim, as required by state law. *See Rentas v. Ruffin*, 816 F.3d 214, 226-27 (2d Cir. 2016) ("Under New York law, a plaintiff must file a notice of claim before suing municipal defendants in a personal injury action."); *Hardy v. N.Y.C. Health & Hosp. Corp.*, 164 F.3d 789, 793-94 (2d Cir. 1999) ("Notice of claim requirements are construed strictly by New York state courts. Failure to comply with these requirements ordinarily requires a dismissal for failure to state a cause of action." (citations and internal quotation marks omitted)); *see also Beck v. City of N.Y.*,

reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime." *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996). A court should consider the "totality of the circumstances" in evaluating whether "the facts available to the officer at the time of arrest" meet that bar. *Caldarola v. Calabrese*, 298 F.3d 156, 162 (2d Cir. 2002) (internal quotation marks omitted). It is enough that probable cause existed to permit arrest, and — at least for purposes of a false arrest claim — it is irrelevant "whether probable cause existed with respect to each individual charge, or, indeed, any charge actually invoked by the arresting officer at the time of arrest." *Jaegly v. Couch*, 439 F.3d 149, 154 (2d Cir. 2006); *accord Figueroa v. Mazza*, — F.3d — , 2016 WL 3126772, at *6 (2d Cir. June 3, 2016).

Upon review of the uncontested record in this case, the Court concludes that Plaintiff's claims fail because the Officer Defendants had probable cause to believe, at a minimum, that Plaintiff was guilty of harassment in the second degree. Under New York law, a person commits harassment in the second degree when, "with intent to harass, annoy or alarm another person . . . [h]e or she engages in a course of conduct or repeatedly commits acts which alarm or seriously annoy such other person and which serve no legitimate purpose." N.Y. Penal Law § 240.26. Here, the Officer Defendants' probable cause to believe that Plaintiff was guilty of that offense derived from the complaint filed by Plaintiff's ex-wife and Detective Markadt's subsequent investigation. As an initial matter, it is well established that "probable cause exists if a law enforcement officer received information from some person, normally the putative victim or eyewitness, unless the circumstances raise doubt as to the person's veracity." *Betts*, 751 F.3d at

---

507 N.Y.S.2d 129, 131 (Sup. Ct. 1986) (applying New York's notice-of-claim requirements to action to recover property seized at arrest). (*See* Defs.' Mem. 9-10).

82 (internal quotation marks omitted); *see also Panetta v. Crowley*, 460 F.3d 388, 395 (2d Cir. 2006) (noting that "police officers are entitled to rely on the allegations of fellow police officers" (internal quotation marks omitted)). Moreover, although Plaintiff's ex-wife was not necessarily an impartial complainant, Detective Markadt did not rely on her allegations alone; he conducted further inquiries and gathered evidence of the harassing text messages. The results of that investigation, combined with Plaintiff's appearance outside the home of his ex-wife and their daughter, was enough to supply the Officer Defendants with probable cause to arrest.[3]

As for Plaintiff's claims against the City, *Monell v. Department of Social Services*, 436 U.S. 658 (1978), can provide for municipal liability for constitutional deprivations, but it does not provide an independent cause of action where, as here, no underlying constitutional violation exists. *See City of Canton v. Harris*, 489 U.S. 378, 385 (1989) (observing that *Monell* stands for the rule that "a municipality can be found liable under § 1983 only where the municipality *itself causes the constitutional violation at issue*" (emphasis added)). Because Plaintiff's claims against the Officer Defendants fail as a matter of law, Plaintiff's claims against the City also fail.

---

[3] The Officer Defendants would be entitled to summary judgment on Plaintiff's arrest-related claims even if the evidence known to them prior to Plaintiff's arrest fell short of creating probable cause. That is because there was, at a minimum, "arguable probable cause to arrest," entitling them to qualified immunity. *See, e.g.*, *Hart v. City of N.Y.*, No. 11-CV-4678 (RA), 2013 WL 6139648, at *7 (S.D.N.Y. Nov. 18, 2013) ("In the false arrest context, 'an arresting officer is entitled to qualified immunity . . . if he can establish that there was arguable probable cause to arrest. Arguable probable cause exists if either (a) it was objectively reasonable for the officer to believe that probable cause existed, or (b) officers of reasonable competence could disagree on whether the probable cause test was met.'" (alterations and citation omitted) (quoting *Ackerson v. City of White Plains*, 702 F.3d 15, 21 (2d Cir. 2012) (per curiam))).

## CONCLUSION

For the reasons stated above, Defendants' unopposed motion for summary judgment is GRANTED in its entirety, and the Complaint is dismissed.[4]  The Clerk of Court is directed to mail a copy of this Opinion and Order to Plaintiff and to close the case.

SO ORDERED.

Date:  June 8, 2016
       New York, New York

JESSE M. FURMAN
United States District Judge

---

[4] The Court feels compelled to note that, although Defendants prevailed, the Assistant Corporation Counsel representing Defendants failed to fulfill certain basic obligations throughout the course of this litigation.  To begin, defense counsel missed the deadline to file an answer on behalf of Detective Markadt, and requested an extension *nunc pro tunc* only after being called by the Court's law clerk.  (Docket No. 29).  Next, the Assistant Corporation Counsel failed to provide in full the initial disclosures required under Rule 83.10 (applicable to certain Section 1983 cases) of the Local Rules for the Southern District of New York; complete disclosures were provided only after *pro se* Plaintiff submitted a letter to the Court.  (Docket Nos. 37, 39).  Defense counsel then failed to submit the Court-ordered letter that is to precede an initial pretrial conference, and did so only after being called — again — by the Court's law clerk.  (Docket Nos. 35, 47, 51).  Likewise, she missed the deadline for a Court-ordered letter regarding mediation — once more, filed only after a call from Chambers.  (Docket No. 66).  She then failed to submit the Court-ordered letter regarding summary judgment practice — filed, yet again, only after a call from Chambers.  (Docket No. 102).  The pièce de résistance came when, after all the foregoing instances of carelessness *and* after receiving an extension from the Court (Docket No. 117), defense counsel filed her motion for summary judgment a day late (Docket No. 119).  As already described, Plaintiff objected to the motion on that basis and others; had he not obstinately done so only in a manner directly contrary to this Court's orders, defense counsel may have had to account for her slipshod lawyering in arguing this motion.  All of which is to say, although Plaintiff lost this case, defense counsel should not view herself as having won it.